Evans *v.* McKinley.

5-2564                                      352 S. W. 2d 829

Opinion delivered January 15, 1962.

*B. W. Thomas,* for appellant.

*Wood, Chesnutt & Smith,* for appellee.

Ed. F. McFaddin, Associate Justice. The appellants (plaintiffs below) are patrons of Garland County School District No. 1; and the appellees (defendants below) are (a) the Directors of the said School District, and (b) the members of the Garland County Board of Education. We will refer to the parties as they were styled in the Trial Court.

The plaintiffs sought a writ to require the Directors of Garland County School District No. 1 to maintain in

or near the community of "Star" a school for children of the first six grades; and the plaintiffs also sought a writ to require the said School Directors and the County Board of Education to designate a site and build a school building in the western part of the School District. After hearing the evidence, the Chancery Court ruled against the plaintiffs on both points, and this appeal ensued. For convenience, we discuss separately the two alleged causes of action.

I. *Maintaining A Grade School At "Star."* Garland County School District No. 1 is about thirty miles long, east and west. Star is located in the western part of the District; Jessieville is located in the eastern part of the District; and by far the greater number of pupils of the District live in the Jessieville area. The problem is how to maintain a creditable school near Star, where there are only a few pupils. For years there had been a grade school at Star, with only one teacher who taught the six grades; but the pupils in attendance at the Star School gradually declined, so that for the years shown below there were only the following pupils:

| | |
|---|---|
| 1957 | 18 pupils |
| 1958 | 12 pupils |
| 1959 | 16 pupils |
| 1960 | 12 pupils |

In 1960 the School Directors discontinued the school at Star and had the pupils in the Star community transported each school day to the larger school at Jessieville, thirty miles distant. This necessitated that some of the children had a bus trip of nearly two hours each morning and evening; and this suit resulted.

It was shown that the school at Star for the first six grades was inefficient, both educationally and economically; and the School Officials testified that it was far better for the children to endure the long bus ride, rather than continue in the small one-room school in Star. After hearing all the evidence, the learned Chancellor ruled:

"That the action of the Board of Education of Garland County School District No. 1 in closing the Grade School known as the "Star" School in said District was within the discretion of said Board of Education, and the Plaintiffs have shown no abuse of discretion on the part of the Defendant Board of Education in closing the said school."

We conclude that the Chancellor was correct. Section 80-509 Ark. Stats., in listing the powers and duties of school directors, says that they shall: "(a) Have the care and custody of the school house, grounds, and other property belonging to the District, . . ." "(b) Purchase buildings or rent school houses and sites therefor, and sell, rent, or exchange such sites or school houses. . . ." "(d) Employ such teachers and other employees as may be necessary for the proper conduct of the public schools of the district, . . ." "(g) Visit the schools frequently, see to the welfare of the pupils, encourage them in their studies, and assist the teacher in the work so far as they can. . . ." "(m) Do all things necessary and lawful for the conduct of an efficient free public school or schools in the district."

Under these and other powers, the School Directors could, in good faith, reach the decision they did about the Star School; and the evidence herein does not show that the School Directors acted in bad faith. In *Pugsley* v. *Sellmeyer,* 158 Ark. 247, 250 S. W. 538, 30 A. L. R. 1212, we said:

"Courts will not interfere in matters of detail and government of schools, unless the officers refuse to perform a clear, plain duty, or unless they unreasonably and arbitrarily exercise the discretionary authority conferred upon them."

In 47 Am. Jur. 325, "Schools" § 44, cases from many jurisdictions are cited to sustain this statement:

"The courts will not interfere with the exercise of discretion by school directors in matters confided by law to their judgment, unless there is a clear abuse of the discretion, or a violation of law. Every presumption is

in favor of the proper exercise of power when its object is reasonably germane to the purposes of the grant.''

Therefore, we affirm the Chancery decree in regard to closing the school in the Star community.

II. *The Location And Construction Of A School In The Western Part of The School District.* The plaintiffs alleged and established: that in March 1952, an election was held in the School District and a bond issue of $10,000.00 was voted for a new grade school to be erected in the western part of the District; that since 1952 the money realized from the sale of the bonds has been in the County Treasury; and that the members of the School District and members of the County Board of Education had failed to select a site and undertake the construction of said school building. The prayer of the complaint was that the School Directors and the members of the County Board of Education be required to select a site and commence the construction of said school building.

After hearing the evidence, the Chancery Court refused the prayed relief. This is the second time that some phase of this same situation has reached this Court. In *Johnson* v. *Robbins,* 223 Ark. 150, 264 S. W. 2d 640, some patrons of the same School District prayed that the Garland Chancery Court select a site for the location of said school building; and, in holding that the Court should not select a site, we said:

''Although it is true, as the appellees point out, that arbitrary action on the part of a school board is subject to judicial review, the court even then does not substitute its judgment for that of the board. All that equity does is to restrain a course of conduct found to be arbitrary; the choice of a more reasonable plan is then left to the directors. In the case at bar the third selection is not yet final, in that the County Board of Education has not given its necessary approval. But even if that board had acted it is not the court's place to lift the matter from the hands of the two administrative agencies and to make

for them the choice that the law commits to their discretion.''

In the present case it was practically admitted by the defendants that they had no present intention of undertaking to construct a school building with the proceeds of the bond issue. The question before us now is whether the Chancery Court should have issued a writ to compel the expenditure of the trust money for the trust purpose (*i. e.,* the building of a school) ; or whether the Court was correct in allowing the trust money to remain unexpended because it was shown that the money was: (a) insufficient to accomplish the intended purpose; and (b) even if a building should be constructed, it would be inexpedient to use it for school purposes.

In our democratic system, the School District is one of the units of self-government, and it would be unfortunate for all concerned if the School Directors, as the chosen representatives of the People voting in the school election, would fail and refuse to earnestly and fairly undertake to accomplish the legally expressed directions of the electorate. In such an event, recourse to the judiciary would be available to the electorate. But, in the case at bar, the evidence does not justify judicial intervention, because it is shown that the School Directors are trying to conserve the trust money, rather than to waste it. The evidence established that since 1952 building costs, shifts in the location of school children, and the upgrading of the school system, combined to make it extremely unwise to expend the trust money for a school building, because (a) no creditable school building could now be constructed in the western part of the District for as little as $10,000.00; (b) if a building should be constructed, as desired by the plaintiffs, there would not be sufficient pupils to justify maintaining the school (as discussed in Topic I, *supra*) ; and (c) it is far wiser to transport the children from the Star community to the Jessieville school, rather than to attempt to maintain a school for the six elementary grades in the Star community (as discussed in Topic I, *supra*).

Therefore, on the record before us, we cannot say that the Chancery Court was in error in its decree on this phase of the case. The trust fund is not to be diverted, and should a subsequent school enumeration disclose the feasibility of constructing and maintaining an elementary school slightly west of or near the center of the District, then the present decree is no bar to the further efforts by any patrons of the School District toward the achieving of that result.

Affirmed.