The Honorable John E. Miller State Representative P.O. Box 436 Melbourne, Arkansas 72256
Dear Representative Miller:
This is in response to your request for an opinion on the following two questions:
 1. If a school district is petitioning annexation to another school district pursuant to Act 966 of 1991, A.C.A. 6-13-1201 et seq., may it convey its real property to a third party, on vote of the school board of the district to be annexed, at any time prior to such annexation taking place?
 2. If the conveyance of such real property is permissible, then can the district convey such property to cities, towns, or other political subdivisions for an amount less than an appraised value (e.g., $1 to $100 per parcel, including improvements such as school buildings) with or without the agreement of the receiving district(s) in a pre-annexation agreement or a resolution of the board(s) of the receiving districts(s)?
It is my opinion, in response to your first question, that the school district to be annexed has statutory authority to make valid contracts and to convey real property until the effective date of the annexation, except that any such conveyances must be for proper school purposes, must be done in good faith, and must not be accomplished with fraudulent or collusive intent; otherwise, they are invalid. The question of whether a particular conveyance is valid would involve a factual determination. In my opinion the answer to your second question will depend upon whether the conveyance amounts to a diversion of school property or funds to other than school purposes.
With regard to your first question, A.C.A. 6-13-1206 (Cum. Supp. 1991) (a part of the codification of the Act you reference), provides as follows:
 (a) Any resulting district created under this section shall succeed to the property of the district dissolved, shall become liable for the contract [sic] and debts of such district, and may sue and be sued therefor.
Although this statute provides that the resulting district shall succeed to the property of the dissolved district, presumably this does not occur until the effective date of the annexation. At any time prior to this effective date, therefore, it appears that the board of the district to be annexed retains its statutory powers, including the power granted at A.C.A. 6-13-620
(Cum. Supp. 1991) to "[p]urchase buildings or rent schoolhouses and sites therefor and [to] sell, rent, or exchange such sites or schoolhouses. . . ." It also appears that under A.C.A. 6-13-1206 (a) the resulting district would be required to honor the contract.
It should be noted, however, that a a contract or conveyance of school property is void if the conveyance is not made in good faith, or is fraudulent. See Scott v. Magazine Special School District No. 15, 173 Ark. 1077, 294 S.W. 365 (1927) (sale of school property to private parties to conduct private school was within the discretion of the board absent a showing of fraud in the making of the contract), and Evans v. McKinley, 234 Ark. 472,352 S.W.2d 892 (1962) (decision to close school was within discretion of board of directors absent bad faith). Although there appear to be no Arkansas cases specifically involving the transfer of school property prior to annexation, in my opinion, the principle noted above would be applied in such instances. Cf., also Chidester School District No. 50 v. Faulkner,218 Ark. 239, 235 S.W.2d 870 (1951) (teacher contracts entered into prior to annexation must be honored by annexing school district if made in good faith and without fraudulent collusion).
The question of whether a particular conveyance is fraudulent, however, or not made in good faith, will involve a factual determination which must be made in light of all the surrounding circumstances[2] including the existence of and terms of any pending annexation.
In response to your second question, it is my opinion, again, that sales of school property may be void if made in bad faith, or procured by fraud. This principle would also apply to sales made to political subdivisions. Additionally, however, the sale of such property to third parties such as cities, towns, or other political subdivisions without adequate consideration might be subject to challenge under Arkansas Constitution, art. 14, 2 and3, which provide respectively as follows:
 No money or property belonging to the public school fund or to this State for the benefit of schools or universities, shall ever be used for any other than for the respective purposes to which it belongs.
* * *
 . . . [No local school tax] shall be appropriated for any other purposes nor to any other district than that for which it is levied.
In my opinion the sale of school property to political subdivisions for less than adequate consideration might run afoul of these provisions. Although such a sale for adequate consideration, would, if the proceeds were applied for school purposes, appear not to be prohibited, a sale for less than adequate consideration might be challenged as a diversion of school property or funds.
Additionally, it has been stated as a general matter that:
 Any disposition of school property must be for the benefit of the school district and not a gift to other persons. So a disposition of school property must be consistent with good business judgment and sound business principles, and the board may not convey such property without consideration. . . . [Footnotes omitted.]
78 C.J.S. Schools and School Districts, 244(a).
It is therefore my opinion that the answer to your second question will depend upon the particular facts surrounding each conveyance, but a sale for less than adequate consideration might be constitutionally suspect.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana Cunningham Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[2] In Op. Att'y Gen. No. 87-106, however, where a school district, with full notice of an approaching court ordered annexation, issued and bought back bus driver contracts, which they knew would not be performed, it was concluded that such action "shocks the conscience" and "raise[s] serious questions about fraud being perpetrated against the public. . . ."