## AHRENT v. SPRAGUE.

### Opinion delivered July 14, 1919.

1.   TELEGRAPHS AND TELEPHONES—RIGHT TO CONSTRUCT LINES.—Under Kirby's Digest, § 2934, any person, or corporation organized for the purpose of transmitting intelligence by telephone, may construct, operate and maintain its lines along and over the public highways and the streets of the cities and towns of the State, provided the ordinary use of such highways and streets be not obstructed by reason of their occupation by said telephone company.

2.   TELEGRAPH AND TELEPHONE COMPANIES—HEIGHT OF WIRES FROM GROUND—OBSTRUCTION OF TRAFFIC.—Appellee operated a telephone company, maintaining wires along the public highways. Appellants operated a threshing machine, which broke appellee's wires in going from the road into a field. Appellee brought a suit in equity to enjoin appellant from breaking its wires. Appellant, in a cross-bill, sought to enjoin appellee from maintaining its wires at too low a height from the ground. Under the evidence it appeared that appellee's wires were maintained at a height of over ten feet from the ground. *Held,* appellant was not entitled to injunctive relief under his cross-bill.

3.   EQUITY JURISDICTION—IRREPARABLE INJURY—INADEQUATE LEGAL REMEDY.—Equity will interfere to prevent an irreparable injury, or in a case where the plaintiff has no adequate remedy at law.

4.   APPEAL AND ERROR—INJUNCTIVE RELIEF—BURDEN OF PROOF.—The burden is upon the plaintiff to establish grounds for injunctive relief sought.

5.   TELEGRAPHS AND TELEPHONES—DESTRUCTION OF WIRES—RIGHT TO INJUNCTIVE RELIEF.—Appellee operated a telephone company and maintained wires along the public highway. Appellants in op-

erating a threshing machine broke appellee's wires in going from the road into a field and returning to the road. Appellee maintained its wires at a height of over ten feet from the ground. *Held,* a finding by the chancellor that the injury suffered by appellee was immediate, destructive and irreparable was not against the preponderance of the evidence, and that an injunction issued against the appellants would not be disturbed on appeal.

Appeal from Clay Chancery Court, Western District; *Archer Wheatley,* Chancellor; affirmed.

### STATEMENT OF FACTS.

Appellee is the owner of the Corning Telephone system. His lines are constructed along the highways from Corning to several nearby towns. Appellants owned and operated a steam threshing machine which was carried from place to place during the threshing season along the highways where the appellee's telephone wires are strung and into the wheat fields adjacent thereto. Appellee claims that appellants wilfully and repeatedly broke down his telephone wires with their thresher and brought this suit in equity to enjoin appellants from tearing down and otherwise interfering with his telephone wires, poles, etc.

Appellants filed an answer and cross-complaint. They denied the allegations of the complaint and allege that appellee maintained his telephone line so close to the ground along the highways where they were strung that they were a nuisance and interfered with the transportation of their threshing machine.

The chancellor found the issues in favor of appellee and the decree concludes as follows: "It is therefore considered, ordered and decreed by the court that the defendants, W. M. Ahrent, Chris Bauschilicher, Loui Allmandinger, John Borchers and Mike Hemmerlein, and each of them, their agents, servants and employees, be and the same are hereby enjoined and restrained from in any way interfering with or damaging the wires, poles or other property of plaintiff; provided, this order shall not be construed to prohibit the defendants from moving their traction engine, separator and other appliances

along the public highways, nor shall it apply to prevent the defendants from moving or cutting the wires of the plaintiff to such an extent as may be absolutely necessary to move their said traction engine, separator, etc., along said public highways; provided, further, that it does not apply (except as to wilful destruction), where plaintiff's lines are not placed as required by section 2934 of Kirby's Digest, and with the construction of said section that it includes travel by threshing machines and appliances.''

Appellants have prosecuted an appeal and appellee a cross-appeal.

*The appellants pro se.*

1. The findings and decree are erroneous, (1) because no injunction should have been granted and the complaint should have been dismissed; (2) a restraining order should have been granted on defendants' cross-complaint, and (3) costs should have been adjudged against plaintiff.

Except for the permission given by Acts 1885, found in Kirby's Digest, § § 2934-5-6, appellee had no right to erect or maintain his lines on or along the public highways, and if he claims the benefits he must accept the burdens imposed by them. *Ib.* 2934. Appellee's lines were not constructed in conformity with section 3924 *Ib.*, and did obstruct travel and were a nuisance. 37 Cyc. 247; 18 Ark. 252. In abating a public nuisance one may even use force if necessary. 29 Cyc. 1217. Appellants had the right to break or tear down the lines where they were so low was to catch on their machine, and injunction will not lie.

2. If any remedy it was at law. 22 Cyc. 759; *Ib.* 758 and note. The proof does not show that the acts were ''wilful and wanton,'' but, if so, that would only be a misdemeanor under Kirby's Digest, sections 1899, 7945, and it will not be presumed in the absence of intention that any violation of criminal law was contemplated. Taylor on Ev. (10 ed.), § 112.

3.   Appellee, by his failure to keep his lines up and comply with section 3934, Kirby's Digest, was the first to commit a fault and in injunction suits must come into court with clean hands.  22 Cyc. 788, note 53, 776 G.

4.   Appellants owed no duty to protect appellee's wires when they interfered with the movement of their threshing machine along the public roads, it being his duty to keep them out of the way, and had the right to remove them.  80 Ark. 499; 97 S. W. 660.

5.   An injunction should have been granted on the cross-complaint.  Kirby's Digest, § 2934; 37 Cyc. 252-3, 765, 760; 142 Ill. 104.

6.   The costs should have been adjudged against appellee.  *Supra.*

*G. B. Oliver,* for appellee.

1.   Appellants' brief does not comply with Rule 9 and the appeal should be dismissed or the decree affirmed.

2.   The evidence shows no obstruction of a public road, and the lines were constructed according to law and sufficiently high to allow passage of travel and are in no sense either a public or private nuisance.

3.   The fact that appellants have, each threshing season, given the same unwarranted trouble is sufficient warrant for injunction.

4.   On the cross-appeal no case is made, as there is no showing that appellee has not and will not maintain his wires as provided by Kirby's Digest, section 2934.

HART, J., (after stating the facts).  (1)  Appellee has conducted and is conducting a telephone business in the town of Corning and other towns in the western district of Clay County, and in the country between said towns.  Pursuant to the provisions of section 2934 of Kirby's Digest, appellee has erected his poles and wires and has constructed his telephone lines along and over the highways between said towns.  Under the provisions of this section of the digest, any person, or corporation organized for the purpose of transmitting intelligence by

telephone may construct, operate and maintain its lines along and over the public highways and the streets of the cities and towns of the State, provided the ordinary use of such highways and streets be not obstructed by reason of their occupation by said telephone companies.

According to the testimony of appellee his telephone poles are from 16 to 18 feet high and the wires are stretched and are not allowed to sag. At various places where the lines cross the highways the wires are fastened to trees and are over 20 feet from the ground. The lines are properly inspected and when a wire falls to the ground or begins to sag or a pole becomes rotten, repairs are made at once. Nothing has been introduced in evidence to show that the telephone lines as constructed and maintained by appellee interfere with the public travel over the highways. Appellants did show that in two or three instances the wires had fallen down, but the testimony shows that they were immediately repaired by appellee. Appellant's testimony tended to show that the wires sagged to such an extent that on four different occasions when they turned from the highway to go into wheat fields and then back to the highway again, the elevator which was attached to the separator caught in the wire and tore the line down. The separator and the engine were on the same truck, the engine being about 15 or 18 feet in front of the separator.

(2) According to the appellants' own testimony the engine was 10 feet high and the elevator 12 feet 1 inch high and in each instance the separator caught the wire. This shows that the wires were over 10 feet high at the places where the thresher left the highway to enter the wheat fields and where the wires were torn down. This was sufficiently high that the ordinary use of the highway would not be obstructed. Hence it may be said that it is clearly established that the telephone lines of appellee as constructed and maintained are legal structures. It follows that appellee did not so construct and maintain his telephone lines as to constitute a nuisance and the

chancellor correctly held that appellants are barred of injunctive relief under their cross-complaint.

It also follows that appellee has constructed and maintained his lines as directed by the statute and has the right to so maintain them along the public highways. This brings us to a consideration of the question of what circumstances, if any, would entitle appellee to injunctive relief against anyone wilfully tearing down his telephone lines or threatening to do so.

(3) It is well settled that equity will interfere to prevent irreparable injury, or in cases where the plaintiff has not an adequate remedy at law. An injury to be irreparable need not be such as to render its repair physically impossible; but it is irreparable when it cannot be adequately compensated in damages, or where there exists no certain pecuniary standard for the measurement of the damage. This inadequacy of damages as a compensation may be due to the nature of the injury itself, or to the nature of the right or property injured. 22 Cyc. 763-4.

In discussing the inadequacy of the legal remedy Prof. Pomeroy says that irreparable injury means a destructive act to property of such peculiar character or use that its loss would not be adequately recompensed by the damages the jury's verdict would give. Pomeroy's Equity Jurisprudence, vol. 6, sec. 544. See also 14 R. C. L., p. 346, sec. 48.

(4) The chancellor found that the facts brings the case for appellee within the principles of law just announced. Is the finding of the chancellor against the clear preponderance of the evidence? The burden was upon appellee to establish his ground for injunctive relief.

(5) According to the testimony of F. B. Sprague, he had trouble each season with the appellants about tearing down his telephone wires. Three other persons owned threshers operated in the same territory and they never tore down his wires at all.

Sprague talked with a relative of one of the appellants who ran the engine and he admitted that they had torn down his wires several times and said that he did not care a damn; that it did not cost him anything. Sprague met some of the appellants on the street one day and told them that if his lines were in their way not to tear them down, but to call him and he would have them fixed. They told Sprague that he did not have any right to have his lines along the public highway; that they had been to see an attorney about it and that he had so advised them. After that they tore the lines down and never said anything to Sprague about it.

One of the appellants and two boys, each a relative of other appellants were witnesses for appellants. Each testified that he was with the thresher when the wires were broken down by coming in contact with the elevator and that the breaking each time was accidental.

Their testimony, however, is contradicted by the attendant circumstances. The proof shows that the wires were broken down three times before the temporary injunction in this case was granted and once afterwards. The time the wire was torn down after the temporary injunction was granted, appellants repaired it at once and it only took them about ten minutes to do so. This tended to show that they would know when the elevator came in contact with the telephone wire. On one other occasion the wire and poles for a half mile were torn down and on another occasion the wire and poles were torn down for the distance of a quarter of a mile. This tended to show that the conduct of appellants in tearing down the wires was wilful, else they would have stopped as soon as the elevator caught on the wire, and would not have continued to move their threshing machine along until they had torn down the wire and poles for such a great distance. Each time the wire was torn down as the threshing machine was being driven into a wheat field from the highway or out of a wheat field back to the highway. In such case the telephone wire and posts would be in plain view. It would not be like the case where the

machine was being driven along the public road where the wires only crossed the road at intervals. Appellants admit that they knew the wire was strung along the highway and when they turned out of the highway to go into a wheat field they knew they would either pass under the telephone wire or that their machine would come in contact with it. The fact that the engine did not come in contact with the wire shows that it was strung over 10 feet high from the ground where the thresher entered the wheat field. The testimony shows that this was enough for all ordinary use. The engine was 10 feet high and the elevator was 12 feet 1 inch. The wire was strung higher than the engine, so that appellants would have only had to have lifted it two feet when they entered a wheat field. Appellants, however, claim that only two men rode on the truck which carried the engine and separator and that one of them guided the machine and that most of the time of the other was taken up with the engine. It was not to be expected that they should keep a continual watch along the highway so as to keep from tearing the line down where it crossed over the highway while the thresher was being moved along the highway; but as we have just seen, they knew when they turned out of the highway into a wheat field they would likely come in contact with the wire and one of them might have climbed up on the elevator and lifted the wire clear of it instead of driving along and tearing down a quarter or a half mile of wire and poles.

The testimony shows that there were extra men on hand to help thresh the wheat and that in the case of the other threshers one of these men looked out to see that the thresher did not tear down the telephone lines. When the line was torn down the business of the telephone company must necessarily be discontinued until the line was repaired. This showed that the injury was immediate and destructive and thus irreparable.

Therefore, under all the circumstances, we are of the opinion that the finding of the chancellor was not against

the preponderance of the evidence and under the settled rules of this court cannot be disturbed on appeal.

What we have said on this branch of the case disposes of the appellee's cross-appeal adversely to him.

It follows that the decree will be affirmed.