SPRINGDALE BOARD OF EDUCATION *v.* Machele
BOWMAN, a Minor, by Sharon Luker, Her Mother, as
Natural Guardian and Next Friend, and Sharon Luker,
Individually

87-147                                            740 S.W.2d 909

Supreme Court of Arkansas
Opinion delivered December 7, 1987

*Cypert, Crouch, Clark & Harwell*, by: *Charles L. Harwell*, for appellant.

*Pearson, Woodruff & Evans*, by: *C. Thomas Pearson, Jr.*, for appellee.

TOM GLAZE, Justice. The appellant, the Springdale Board of Education, appeals from the Washington County Chancery Court's interlocutory-mandatory injunction, which barred the Board and all personnel of the Springdale School District from enforcing the expulsion of appellee, Machele Bowman, from her classes at Springdale High School. This court has jurisdiction of this appeal pursuant to Ark. R. App. P. 2(a)(6) and Ark. Sup. Ct. R. 29(f).

This litigation ensued when the Board agreed with the Springdale school officials that Machele Bowman had violated school policy by "receiving drugs on the school grounds" and that she should be expelled for having done so. Bowman filed a petition for mandatory injunction, alleging, among other things, that no illegal drugs were involved, that the Board's decision was arbitrary, capricious and unreasonable, and that its action denied her

access to the public school system as she is guaranteed by Ark. Stat. Ann. § 80-1501 (Supp. 1985).

The Board filed a motion to dismiss, claiming the chancery court did not have subject matter jurisdiction. Upon being denied that relief, it defended Bowman's assertions stating the evidence was clearly sufficient to justify the Board's decision to expel Bowman. The trial court ruled in Bowman's favor, ordering the Board to readmit her into school. The Board promptly filed its motion with the supreme court to stay the lower court's order until this case could be decided on appeal. We denied the Board's motion, and Bowman has since completed her high school requirements. In fact, Bowman has since graduated, and she now seeks to dismiss this case for mootness. Because the issues raised in this matter are of public interest and practical importance, as well as are ones which are subject to repetition, we deny Bowman's motion to dismiss the appeal. *See Netherton v. Davis*, 234 Ark. 936, 355 S.W.2d 609 (1962).

For its first point for reversal, the Board argues that the affirmative relief sought by Bowman was actually one of mandamus and that the chancery court had no jurisdiction to hear a mandamus action. *See Springdale School District v. Jameson*, 274 Ark. 78, 621 S.W.2d 860 (1981). In addition, the Board contends mandamus is the procedure by which courts review school board actions in the expulsion of students, and, to support this proposition, cites the cases of *Williams v. Board of Education for Marianna School District*, 274 Ark. 530, 626 S.W.2d 361 (1982) and *Fortman v. Texarkana School District No. 7*, 257 Ark. 130, 514 S.W.2d 720 (1974). We cannot agree with either of the Board's arguments on this point.

The *Williams* and *Fortman* cases did involve situations where students were expelled, and the students sought mandamus relief in circuit court against the respective school districts requesting they be reinstated. Nevertheless, the trial court in each case denied such relief, and the supreme court affirmed. It is settled law that mandamus will not be used to control a public official in a discretionary act. *Lewis v. Conlee*, 258 Ark. 715, 529 S.W.2d 132 (1975). And, while such discretion is not unlimited, *id.* at 720, 529 S.W.2d at 135, the supreme court in the *Williams* and *Fortman* cases simply held that the school

officials in those situations had not abused their discretion when expelling the students. Although the *Williams* and *Fortman* decisions are helpful in reviewing applicable law when considering school board actions in expelling students, those holdings in no way indicate that a mandamus action is the required remedy to measure the reasonableness of a board's action in such cases. To the contrary, the *Fortman* court, quoting from *Safferstone* v. *Tucker*, 235 Ark. 70, 357 S.W.2d 3 (1962), said:

> In this State a broad discretion is vested in the board of directors of each school district in the matter of directing the operation of the schools *and a chancery court has no power to interfere with such boards in the exercise of that discretion unless there is a clear abuse of it* and the burden is upon those charging such an abuse to prove it by clear and convincing evidence. (Emphasis supplied.)

The *Safferstone* case involved school patrons, from a certain school attendance area, who brought action in chancery court for an injunction to enjoin the Little Rock School Board from transferring students, who resided in the patrons' area, to a school situated in another or adjacent area. Like in *Safferstone*, Bowman, in the instant case, tested the Board's action in expelling her by filing a complaint for an injunction in chancery court, but the form or nature of relief requested differs here since she asked for an affirmative act instead of asking that an act be enjoined, *viz.*, that the Board be compelled to readmit Bowman into high school.

The Board cites the case of *Nethercutt* v. *Pulaski County Special School District*, 248 Ark. 143, 450 S.W.2d 777 (1970) for the proposition that a mandamus action is not cognizable in chancery court. Of course, such a proposition is correct and is one with which we take no exception. The *Nethercutt* case involved two school teachers who sought both a mandatory injunction and a mandamus action to compel the execution of their annual contracts to restore them to their jobs and to pay them their salaries. The supreme court rejected the school teachers' argument that the chancery court had power to issue their request for a writ of mandamus, and added it was settled that equity had no jurisdiction to enforce an executory contract for personal services since the remedy at law was adequate. In the instant case, Bowman sought an injunction, not a

mandamus, and, unlike in *Nethercutt*, the parties had no contract between them which would require either of them to seek a remedy at law. The same can be said to distinguish the case of *Jameson*, 274 Ark. 78, 621 S.W.2d 860, cited in the dissent. The *Jameson* case, too, concerned a school teacher who sought reinstatement and pay from the school district, and this court found the teacher's action was one based on a contract implied in law.

The real importance of *Jameson* to the facts here is found in the rule—first stated in *Maddox, et al.* v. *Neal, et al.*, 45 Ark. 121 (1885)—that a writ of mandamus will issue whenever the directors of a school district fail or refuse to do an act which is *plainly their duty to do.* More specifically, a mandamus action enforces the performance of a legal right after it has been established; its purpose is not to establish a right. *See Boone County* v. *Apex of Arkansas, Inc.*, 288 Ark. 152, 702 S.W.2d 795 (1986). There must be no discretion available to the ordered party to perform the act. *Id.*, 288 Ark. at 154, 702 S.W.2d at 796.

In the instant case, Bowman had no clear or specific right to attend school if, indeed, she violated a valid school policy which authorized either her suspension or expulsion. The Board unquestionably had the discretion to enforce school policy, and whether Bowman violated that policy was a contested issue between the parties. Thus, Bowman's recourse was to establish her right to continue in school by showing she did not violate the policy or the Board in some way acted arbitrarily, capriciously or contrary to law. Clearly, Arkansas law permits a person to apply for injunctive relief in a form which requires acts to be restrained or mandated, *see* ARCP Rule 65(e), and Bowman, in pursuing that relief in chancery, was entitled to establish her right to attend school by testing the Board's actions in enforcing the school policy against her. Therefore, under the circumstances of this case, we have no hesitancy in holding the chancellor had jurisdiction to decide Bowman's request for injunctive relief. Therefore, we affirm him in this respect.

While we agree the trial court possessed the power to hear and decide this cause, we are at the same time of the belief that it erred when ordering the Board to readmit Bowman into school. Once again, we look to the *Fortman* and *Williams* cases for

guidance. In *Fortman*, the court spoke approvingly of what it called controlling principles stated by Professor Bolmeier in "The School in the Legal Structure," § 16.17 (2d Ed. 1973). Although we need not recite all of the passages the court set forth in *Fortman*, we do believe the following parts are particularly instructive here:

> The legal principle is also firmly established that school authorities may expel or suspend from school any pupil who disobeys a reasonable rule or regulation. School officials are clothed with considerable discretionary authority in determining whether or not a rule has been violated, and, in the event they conclude that a violation has occurred, they also have discretionary authority in determining the nature of the penalty to be imposed—providing it is not arbitrary or unreasonable.
>
> * * *
>
> The courts look somewhat askance at acts of suspension and particularly at expulsion, as methods for forcing pupils' conformance to rules and regulations. Some incorrigible pupils violate school regulations for the very purpose of being removed from the school environment. It should be realized that when a pupil is denied school attendance, he is deprived of education designed for his betterment. Of course when a pupil's misconduct or disobedience is of such a grave nature that his presence is disrupting to the school and detrimental to the morale of the student body, suspension, or even expulsion, is likely to be judicially condoned.

As stated earlier, our court has adhered to the rule that a chancery court has no power to interfere with school district boards in the exercise of their discretion when directing the operation of the schools unless the boards clearly abuse their discretion. The burden is upon those charging such an abuse to prove it by clear and convincing evidence. *Fortman*, 257 Ark. at 134, 514 S.W.2d 720. Stated in yet other terms, the court, in acknowledging a school board's power to expel a student, has held it does not have the power to substitute its judgment for that of such a board and will do so only when the court determines the

board's judgment was arbitrary, capricious or contrary to law. *Williams*, 274 Ark. at 533-34, 626 S.W.2d at 363. From our careful examination of the record before us, we cannot say the Board abused its discretion or acted arbitrarily, capriciously or in any way contrary to law. In so holding, we recount the evidence we believe supported the Board's decision to expel Bowman.

The Board policy in issue was approved on October 9, 1984, and it prohibited a student's possession or use of controlled or uncontrolled substances alike without first obtaining the permission of proper school authorities and acting in accordance with the school district's policy relative to medication and use of medicine. A violation of the policy carried sanctions of probation, as a minimum, and expulsion from school for one semester, as a maximum. The Board offered testimony that the policy was instituted to assist in the dispensement of medication to students so school officials can monitor the students' health, and because the policy makes no distinction between illegal or lawful drugs, the Board is afforded a means by which it can control all drug use in the Springdale schools. Bowman never challenged the constitutionality or legality of the actual terms or limits contained within the policy.[1]

At trial, the Board offered substantial evidence which indicated that Bowman violated the Board's drug policy. That evidence began with two Springdale High School coaches who became suspicious of the actions of four girl students who were standing by a jeep during lunch on March 6, 1987. The coaches' surveillance and investigation resulted in their retrieving from the glove box of the jeep a plastic baggie containing three foil packets that contained approximately fifty pills which they described as "white crosses." The jeep actually belonged to a fifth girl, Paige Harrison, whom the school authorities subsequently interviewed. The girls gave varying accounts concerning who had purchased or received the pills, but one girl, Kim Spencer,

---

[1] Bowman did allege the Board's actions in expelling her violated certain due process requirements, but except for arguing she had not received advance notice of the actual policy she was accused of violating, little was said or argued on this point and it is clear Bowman was afforded administrative reviews or hearings before this cause was actually filed in court. In this appeal, Bowman offers no citation of authority or argument dealing with the reasonableness or constitutionality of the drug policy adopted by the Board.

admitted to the school principal that she had agreed to sell a packet for $3.00 to three girls, one of whom was Bowman. When confronted by the principal, Bowman admitted that she had paid Harrison for the pills at a time and place away from school, but denied ever having received the pills. Spencer, however, said that she gave pills to Harrison who in turn was to deliver them to Bowman. Harrison related she made that delivery to Bowman on March 6, 1987, in the girls' bathroom at school after 5th period. Although Bowman denied Harrison's version of what occurred, she did concede in an affidavit that the pills she allegedly received were over-the-counter diet aids and were represented, as such, to her.

The Springdale school authorities, after considerable investigation, expelled Spencer and two other girls for the remainder of the semester because of their involvement in the selling and purchasing of the pills on school property. At first Harrison was only suspended for five days for her involvement, but after she admitted delivering the pills to Bowman, Harrison was also expelled for the rest of the semester. After further consideration of Bowman's alleged involvement, the school authorities decided to believe Harrison's statement that she gave the pills to Bowman at school, and they expelled Bowman for her participation in violating the school's drug policy.

Unlike the trial court, we believe the school authorities proceeded reasonably in discharging their duties in enforcing the Board's drug policy. The chancellor expressed his genuine concern that drug use should and must be controlled in the public schools, but he believed that the proof accumulated by school officials failed to show Bowman actually received drugs since no laboratory or other evaluation had been made of the pills. We fail to perceive that as a serious problem, especially in view of the policy adopted by the Board. Again, the policy's terms were broad enough to cover all drugs, including so-called diet aids, which can be sold over the counter. Based upon the evidence, the Board could reasonably believe, and did, that Bowman paid for pills, covered under Board policy, and received them on school grounds. Accordingly, we reverse the trial court's decision finding the Board's actions in this matter were arbitrary, capricious and contrary to law.

HICKMAN, PURTLE and DUDLEY, JJ., dissent.

DARRELL HICKMAN, Justice, dissenting. I join Justice Purtle's dissent but write separately to emphasize my position.

The chancery court did not have jurisdiction. In two cases, both involving the discipline of students by a school board, the aggrieved parties filed a petition for writ of mandamus in circuit court. *Fortman* v. *Texarkana School Dist. No. 7*, 257 Ark. 130, 514 S.W.2d 720 (1974); *Williams* v. *Board of Education*, 274 Ark. 530, 636 S.W.2d 361 (1982). It has been the law in Arkansas since 1909 that a pupil claiming to have been suspended maliciously, arbitrarily or without reason has a remedy by mandamus to compel the school authority to reinstate the pupil. *Douglas* v. *Campbell*, 89 Ark. 254, 116 S.W. 211 (1909).

This case is in chancery court through a legal fiction, an oxymoron, called a mandatory injunction. (Literally, a mandatory injunction is to make someone not do something they have done.)

Courts of equity have jurisdiction to issue injunctions, preventing acts *before they occur, if* there will be irreparable harm unless the injunction is issued, and *if* there is no adequate remedy at law. *Ahrent* v. *Sprague*, 139 Ark. 416, 214 S.W. 68 (1919).

In this case the act has already occurred — the student has been expelled — and there is an adequate remedy at law — mandamus in circuit court. The mandatory injunction is a legal fiction that cannot create jurisdiction.

I would reverse on grounds of jurisdiction.

JOHN I. PURTLE, Justice, dissenting. It appears to me the majority opinion is an attempt to restore authority in the chancery courts to issue writs of mandamus. This Court ended such authority in the case of *Nethercutt* v. *Pulaski County Special School District*, 248 Ark. 143, 450 S.W.2d 777 (1970). There the school board had declined to renew the contract of Nethercutt and he filed suit in chancery seeking a "mandatory injunction" directing the school board to execute and deliver his contract for the current year. He also sought a writ of mandamus restoring him to his former position and ordering the board to pay

his back salary. The school board demurred on the ground that chancery did not have jurisdiction of the matter alleged in the complaint. The complaint was amended but the board stood on its demurrer and the chancellor dismissed the amended complaint. This Court affirmed the chancellor's holding that he did not have jurisdiction to hear the petition for mandatory injunction and mandamus.

Although the General Assembly had enacted legislation authorizing chancery courts to rule on petitions for mandamus, (see Ark. Stat. Ann. § 33-101 (Repl. 1962)), this Court in *Nethercutt* stated:

> It appears this is the first time we have been asked to focus our attention upon the constitutionality of this statute [Act 54 of 1939]. We must agree that the provision of this act, with respect to the jurisdiction of the chancery court in the case at bar, is in violation of Article 7, §§ 11 and 15 of our Constitution. . . . The writ of mandamus is a common law writ and a remedy at law which was unknown to equity procedure. . . .

> The legislature can neither enlarge nor diminish the jurisdiction of chancery courts and any attempt to do so is unconstitutional. . . . It follows, therefore, that jurisdiction of writs of mandamus, being traditionally common law writs, is restricted to and vested solely in our circuit or law courts.

The majority attempts to avoid the issue of the proper forum to entertain a petition for a writ of mandamus by labeling the relief sought a "mandatory injunction." Nethercutt also tried to get around the mandamus writ by calling his complaint a "mandatory injunction." This Court called it correctly when it stated: "Obviously, it is the thrust of appellants' complaints that by mandamus appellee be compelled to renew appellants' teaching contracts and pay them according to the contractual terms for the ensuing school year. We hold that such an action is not cognizable in equity." Therefore, equity does not have jurisdiction to issue a writ of mandamus even though the language of the complaint called the relief sought by the name of a mandatory injunction.

This court has held since *Goings* v. *Mills*, 1 Ark. 11 (1837), that mandamus will lie only to enforce a clearly established right for which there is no other adequate remedy. An injunction is preventative and affords relief against future acts. *Comer* v. *Woods*, 210 Ark. 351, 195 S.W.2d 542 (1946). Mandamus will not lie to determine future rights. Its purpose is to enforce an established right or to enforce the performance of a duty. *Boone County* v. *Apex of Arkansas, Inc.*, 288 Ark. 152, 702 S.W.2d 795 (1986). *Chandler* v. *Perry-Casa Public Schools District #2*, 286 Ark. 170, 690 S.W.2d 349 (1985). Mandamus will also not lie to compel a specific course of action if the matter is within the discretion of the public official or body. *Lewis* v. *Conlee*, 258 Ark. 715, 529 S.W.2d 132 (1975). Whether a matter is within the discretion of a board, agency, or court, mandamus is cognizable only in the circuit court. *Williams* v. *Board of Education*, 274 Ark. 530, 626 S.W.2d 361 (1982); *Springdale School District* v. *Jameson, Judge*, 274 Ark. 78, 621 S.W.2d 860 (1981); and *Fortman* v. *Texarkana School District #7*, 257 Ark. 130, 514 S.W.2d 720 (1974).

In *Springdale School District* v. *Jameson, Judge, supra*, a teacher was attempting in circuit court to compel a school district to reinstate him in his job. The school district moved to dismiss, or in the alternative, to transfer to chancery. The circuit court denied both motions. The school district then sought a writ of prohibition from this Court. In denying the petition for a writ we stated that the prayer for reinstatement was in the nature of a petition for a writ of mandamus. A writ of mandamus is defined at Ark. Stat. Ann. § 33-102 (Repl. 1962) as an order "granted upon the petition for an aggrieved party or the State when the public interest is affected, commanding an executive, judicial or ministerial officer to perform an act, or omit to do an act, the performance or omission of which is enjoined by law." We held that a mandamus action is cognizable in circuit court and not in chancery, citing *Nethercutt*.

In *Chandler* v. *Perry-Casa Public Schools, supra*, we affirmed the holding by the circuit court that mandamus would not lie to compel a school board to assign a teacher to specific duties. Citing *Jameson, supra*, we explained that the school board had not failed or refused to do an act which was plainly its duty.

In the case before us the appellee seeks to establish her right to reenter school. Although she labeled her prayer for relief a mandatory injunction, she is obviously, like Nethercutt, seeking mandamus to compel the board to readmit her to school. It is clear that circuit courts have the authority to compel a public entity to act. The majority cites only *Safferstone* v. *Tucker*, 235 Ark. 70, 357 S.W.2d 3 (1962), for the proposition that courts of equity also have such power. In *Safferstone* students were seeking in chancery to prevent their transfer to another school; however, *Safferstone* predated *Nethercutt*, and its prayer, which was denied, was not seeking to enforce an established right, but to prevent a future action.

The result of the majority's decision is that a chancery court may compel a public body to act. The majority recognizes the law and the precedent but it mistakenly gives chancery courts jurisdiction which belongs to circuit courts. Since the chancery court does not have subject matter jurisdiction, it is not necessary to determine whether the board's action was capricious, arbitrary, or contrary to the law.

HICKMAN and DUDLEY, JJ., join this dissent.