The Honorable David Dunn State Representative Post Office Box 208 Forrest City, AR 72336-0208
Dear Representative Dunn:
I am writing in response to your request for my opinion on various questions arising from the following reported facts:
 As a result of declining enrollment and other factors, the Forrest City School District has consolidated elementary campuses over the last two years. There are two campuses no longer in use, currently serving no useful purpose to the District, and due to the age and condition of the facilities, it is not anticipated that those campuses would be useful for future needs of the School District. Based upon this situation, the Board of Directors of Forrest City School District has determined that the District should dispose of those properties.
 The District had the campus that was closed at the end of the 2003-2004 school year appraised and announced that it would accept offers for the purchase of the building. The municipality where the campus is located has made an offer for the property which was less than appraised value. Based upon your Opinion No. 2004-213, and the opinions and case law cited therein, the District began the evaluation of both the monetary offer and the non-monetary benefits proposed by the municipality. Interest has now also been shown by other non-profit corporations and for-profit corporations.
 In the interim, Act 2260 of 2005 has become effective amending A.C.A. 6-21-108 to specifically include not-for-profit organizations in the class discussed therein in terms of "donation" of school property.
 At the present time, based upon the interest shown by the various entities, the District would not be considering a "donation" of the property. Rather, the District would be considering monetary offers for purchase. However, based upon your Opinion in 2004-213, the District has been considering, and would like to continue to consider, the non-monetary benefits and/or detriments to the District in relation to any offers by the municipality and/or not-for-profit corporations.
Against this backdrop, you have posed the following questions:
 1. Based upon the language added to A.C.A. 6-21-108
by virtue of Act 2260 of 2005, may the School District continue to consider a sale to a municipality and/or a not-for-profit corporation if the offer includes both a monetary offer and non-monetary benefits/detriments to the District? If so, must those non-monetary benefits be limited to those items specifically set forth in A.C.A. 6-21-180[sic:" 108"](b)(1)(C)?
 2. In the event that offers to purchase are received from both for-profit corporations and not-for-profit corporations (including the municipality), must the District accept the highest monetary bid, regardless of non-monetary benefits/detriments to the District, as determined by the Board of Directors? In other words, is the District limited to accepting the highest monetary bid, regardless of source? If your answer is yes, can the District accept a bid less than appraised value?
 3. If one of the offers is from a non-profit corporation, with the intention of establishing a private school, may the District reject that bid on the basis that the establishment of a private school within the District's boundaries would constitute a detriment to the District in terms of competition for enrollment of students residing within the District?
RESPONSE
In my opinion, the answer to the first part of your first question is "yes," subject to the qualification that nonmonetary "detriments" to the district obviously could not qualify as consideration in support of the contract. I believe the answer to the second part of your first question is, in all likelihood, "no": it does not logically follow that a statutory authorization to donate school district property for a limited range of purposes means that those purposes are the only ones that might qualify as nonmonetary consideration in support of a contract. Rather, in accordance with previous pronouncements from this office, I believe any nonmonetary consideration that results in a "public advantage" to education specifically benefiting the school district, including, but not necessarily limited to, the purposes recited in A.C.A. § 6-21-108(b)(1)(C) (Supp. 2005), would be adequate to support a conveyance of school district property no longer needed for school purposes.
In my opinion, the answer to the first two parts of your second question is "no": a school district board may exercise considerable discretion in determining what net consideration, including nonmonetary consideration, would best serve the district's interests. However, I must note again that nonmonetary "detriments" to a district can never constitute consideration in support of a contract to dispose of school district property no longer needed for school purposes. In light of my response to the first two parts of question 2, the third part of the question is moot.
With respect to your third question, I believe a school district board might in its discretion reject an offer from a prospective purchaser of school district property based upon the fact that the prospective purchaser intends to use the property to establish a private school that might erode the public school district's student population base. In my opinion, no constitutional or statutory provision would preclude a school district board from considering such a nonmonetary factor in determining whether to accept a particular bid.
Question 1: Based upon the language added to A.C.A. 6-21-108 byvirtue of Act 2260 of 2005, may the School District continue toconsider a sale to a municipality and/or a not-for-profitcorporation if the offer includes both a monetary offer andnon-monetary benefits/detriments to the District? If so, mustthose non-monetary benefits be limited to those itemsspecifically set forth in A.C.A. 6-21-180[sic: "108"](b)(1)(C)?
In my opinion, the answer to the first part of this question is "yes," subject to the qualification that "detriments" to a school district can never qualify as adequate nonmonetary consideration for the conveyance of surplus school district property.
Among the statutory powers afforded school districts is the authority to "[p]urchase building or rent schoolhouses and sites therefor and sell, rent, or exchange the sites orschoolhouses[.]" A.C.A. § 6-13-620(a)(3) (Supp. 2005). Circumscribing this statutory charge are the constitutional directive that "the State shall ever maintain a general, suitable and efficient system of free public schools," Ark. Const. art. 14, § 1, and the statutory directive that a school board "[do] all other things necessary and lawful for the conduct of efficient free public schools in the district." A.C.A. §6-13-620(a)(12). As this office has repeatedly noted, school districts boards have broad discretion in operating their districts under the authorities just recited. As one of my predecessors noted in Ark. Op. Att'y Gen. No. 2000-270:
 The Arkansas courts have long interpreted this statute [A.C.A. § 6-13-620] as allowing school boards wide latitude in governing their districts. See, e.g., Safferstone v. Tucker, 235 Ark. 70, 72, 357 S.W.2d 3, 4 (1962); Isgrig v. Srygley, 210 Ark. 580, 197 S.W.2d 39 (1946). See also Springdale Board of Education v. Bowman, 294 Ark. 66, 69, 740 S.W.2d 909, 910 (1987); Leola School District v. McMahan, 289 Ark. 496, 498, 712 S.W.2d 903, 905 (1986). The courts have further held that they will not substitute their judgment for that of a school board with regard to policy matters, unless the school board, in enacting the policy in question, abused its discretion or acted arbitrarily, capriciously, or contrary to law. Id. The court in Leola, supra,
explained "arbitrary and capricious" action by a school board as being action that is not supportable "on any rational basis." Leola, 289 Ark. at 498, 712 S.W.2d at 905. It should be noted that the party challenging the school board's policy has the burden of proving the board's abuse of discretion by clear and convincing evidence. Springdale, 294 Ark. at 69, 740 S.W.2d at 910.
In Safferstone, 235 Ark. at 72, the Arkansas Supreme Court offered the following summary of the discretion that resides in a school district board of directors:
 The law involved appears to be well settled. In this State a broad discretion is vested in the board of directors of each school district in the matter of directing the operation of the schools and a chancery court has no power to interfere with such boards in the exercise of that discretion unless there is a clear abuse of it and the burden is upon those charging such an abuse to prove it by clear and convincing evidence. White v. Jenkins, 213 Ark. 119, 209 S.W.2d 457; Merritt v. Dermott Special School Dist., 188 Ark. 243, 65 S.W.2d 33; Connelly v. Earl Frazier Sp. School Dist., 167 Ark. 49, 266 S.W. 929; Pugsley v. Sellmeyer, 158 Ark. 247, 250 S.W. 538; State v. School Dist. No. 16, 154 Ark. 176, 242 S.W. 545.
Act 2260 of 2005 added the following highlighted language to A.C.A. § 6-21-108 (Repl. 1999):
 SECTION 2. Arkansas Code § 6-21-108 is amended to read as follows:
 6-21-108. School districts authorized to own and convey real property — Donation of property for educational purposes only.
 (a) In addition to the authority of school districts under § 6-13-620 to have the care and custody of the schoolhouse, grounds, and other property belonging to the district, the board of directors for any Arkansas school district shall be authorized and empowered to acquire and hold real estate, tenements, hereditaments, and other real property as is necessary and proper for the purposes of the education of pupils of the district and the administration of the schools of the district.
 (b)(1) If the board of directors for a school district determines that any real estate owned or controlled by the district is not required for the present or anticipated future needs of the school district and that the donation thereof would serve a beneficial educational service for the pupils of the district, then the school district is also empowered and authorized to donate property or any part thereof to a publicly supported institution of higher education, or a vocational-technical or a technical institute, a community college, a not-for-profit organization, or any entity thereof, for any of the following limited purposes:
 (A) Having the real property improved, upgraded, rehabilitated, or enlarged by the donee; or
 (B) Providing a publicly supported institution of higher education or a technical institute or community college with the donated property in which to hold classes for students who are from the district or to educate pupils from within the donating school district even if students from outside the district might also benefit.; or
 (C) Providing community programs, social enrichment programs, or after-school programs for students who are from the district or to educate pupils from within the donating school district even if other persons in the community or students from outside the district might also benefit.
 (2) Furthermore, school districts may donate the fee simple title and absolute interest, without any reservations or restrictions, in and to all real property or any part of the property to the publicly supported institution or college if this property was previously conveyed or otherwise transferred by the institution or college to the school district without cost.
 (c) The execution of all contracts and conveyances and lease contracts shall be performed by the president and confirmed by the secretary of the school board when authorized by a resolution in writing and approved by a majority vote of the school board.
 (d)(1) If the school district donates real property to an entity under this section, then the school district shall have the right of first refusal to reacquire the real property if the entity decides to sell or otherwise dispose of the real property.
 (2) The school district shall not be required to compensate the entity for any improvements to real property reacquired under this subsection.
I gather from your question and your factual recitation that your concern is whether subsection (b)(1) of this statute as amended would permit a school district to sell property to a municipality or a nonprofit corporation for monetary consideration presumably below the property's appraised value but supplemented by unspecified additional nonmonetary consideration. In light of your representation that "the District would not be considering a `donation' of the property," I interpret your question as being whether the factors recited in A.C.A. § 6-21-108(b)(1)(C) are the only ones that might qualify as nonmonetary consideration sufficient to support entering into such a contract.
In my opinion, the statutorily defined circumstances that might support a school district's donating property to another entity are logically distinguishable from those that might constitute nonmonetary consideration for a contract to sell school district property. A donation, after all, is by definition a "gift," unsupported by consideration of any sort. In Ark. Op. Att'y Gen. No. 2004-056, I opined that a school district "could sell the property to the municipality for adequate consideration, including consideration in the form of a `public advantage' that promotes a `general, suitable and efficient system of free public schools.' Ark. Const. art 14, § 1." I further offered the following analysis, to which I still subscribe:
 [S]chool districts are authorized by statute to sell, rent or exchange their property if doing so is reasonably related to the goal of providing a "general, suitable and efficient system of free public schools." Ark. Const. art 14, § 1; A.C.A § 6-13-620(3) (Supp. 2003). I will further note that the Arkansas Supreme Court has held that in certain circumstances "public advantage" can constitute adequate consideration for a sale. See City of Blytheville v. Parks, 221 Ark. 734, 255 S.W.2d 962
(1953). Given the fact that a school district's sole priority under the constitutional mandates discussed above is the advancement of its student's educational interests, I believe the "public advantage" that might constitute an element of consideration supporting a sale of district property must be directly related to advancing free, fair and efficient public education. This principle prompted my predecessor to opine in Opinion 2001-102 that a reviewing court might well question a conveyance of school district property below fair market value to a city when the city intended to lease or sell the property to establish a private school. I am neither authorized nor equipped to make the factual determination whether a sale below fair market value would be supported by consideration in the form of educational public advantage in this instance.
In my opinion, nothing in Act 2260 of 2005 dictates modifying my previous analysis. Section 6-21-108(b)(1)(C) sets forth certain purposes that the legislature has declared might warrant donating school district property to certain designated recipients. I believe those purposes clearly qualify as effecting a "public advantage" to education consistent with the provisions of Article 14, § 1. Extrapolating from these conclusions, I further believe the realization of those purposes might constitute nonmonetary consideration in support of a sale of surplus school district property. However, I do not believe the recited purposes are the only ones that might serve to realize a "public advantage" to education; rather, they are the only purposes that the legislature has mandated will support adonation of surplus school district property. I believe other purposes might constitute nonmonetary consideration in support of a contract to sell school district property. Only a finder of fact acquainted with all of the circumstances attending a sale of school district property could determine whether the nonmonetary consideration was adequate in any particular case.
Question 2: In the event that offers to purchase are receivedfrom both for-profit corporations and not-for-profit corporations(including the municipality), must the District accept thehighest monetary bid, regardless of non-monetarybenefits/detriments to the District, as determined by the Boardof Directors? In other words, is the District limited toaccepting the highest monetary bid, regardless of source? If youranswer is yes, can the District accept a bid less than appraisedvalue?
In my opinion, the school district is not obliged to accept the highest monetary bid. The Code contains no provision obligating a school district to accept any particular form or amount of consideration upon selling surplus school district property. In this regard, I noted in Ark. Op. Att'y Gen. No. 2004-056:
 [S]chool districts are authorized by statute to sell, rent or exchange their property if doing so is reasonably related to the goal of providing a "general, suitable and efficient system of free public schools." Ark. Const. art 14, § 1; A.C.A § 6-13-620(3) (Supp. 2003). I will further note that the Arkansas Supreme Court has held that in certain circumstances "public advantage" can constitute adequate consideration for a sale. See City of Blytheville v. Parks, 221 Ark. 734, 255 S.W.2d 962
(1953). Given the fact that a school district's sole priority under the constitutional mandates discussed above is the advancement of its student's educational interests, I believe the "public advantage" that might constitute an element of consideration supporting a sale of district property must be directly related to advancing free, fair and efficient public education. This principle prompted my predecessor to opine in Opinion 2001-102 that a reviewing court might well question a conveyance of school district property below fair market value to a city when the city intended to lease or sell the property to establish a private school. I am neither authorized nor equipped to make the factual determination whether a sale below fair market value would be supported by consideration in the form of educational public advantage in this instance. However, should the Bearden School District, in the exercise of its broad discretion, elect to sell the unused property to the City of Thornton, any finder of fact weighing the adequacy of the consideration might well be influenced in its determination by evidence that maintaining the unused property would have acted as a drain on the school district's resources. Beyond this speculation, I can only opine that the school district is barred from simply donating the property to the city.
Compare A.C.A. § 14-16-105(d)(1) and -105(e)(1) (mandating that county real and personal property generally may not be sold for less than 3/4 of its appraised value); A.C.A. § 14-54-301(Repl. 1998) and -302 (Supp. 2005) (authorizing municipalities to sell their real estate, presumably for both monetary and nonmonetary consideration). Rather, A.C.A. § 6-13-620(a)(3) simply authorizes school districts to sell such property, leaving it to the discretion of the school district board whom the purchaser will be and what consideration the school district will receive. I believe that broad discretion is bounded by the principles set forth in Safferstone, supra, which I discussed in my response to your previous question.
Question 3: If one of the offers is from a non-profitcorporation, with the intention of establishing a private school,may the District reject that bid on the basis that theestablishment of a private school within the District'sboundaries would constitute a detriment to the District in termsof competition for enrollment of students residing within theDistrict?
In my opinion, the school district board is charged with the responsibility of evaluating all bids in light of all pertinent attending circumstances, including the substance of competing bids. I believe one pertinent circumstance might indeed be the intention of a prospective purchaser to establish a private school on the property, thus negatively impacting the public school district's potential student base. See Ark. Op. Att'y Gen. No. 2001-102 (opining that a reviewing court might well question a conveyance of school district property for less than fair market value to a city when the city intended to lease or sell the property to establish a private school). The only constraint on a school board's discretion in weighing the various bids is its overarching obligation to best serve the interests of the district's students.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh