COURTNEY HUDSON GOODSON, Associate Justice
Appellants Jefferson County Election Commission (CBEC); Stu Soffer, in his official capacity as Jefferson County Election Commissioner; and Michael Adams, in his official capacity as Jefferson County Election Commissioner appeal from the Jefferson County Circuit Court's order granting a petition for writ of mandamus filed by appellee Jefferson County Judge Hank Wilkins ex rel. Jefferson County, Arkansas. For reversal, appellants argue that the circuit court did not have the authority to order them to provide the election coordinator (EC) for Jefferson County with information and access to items necessary to facilitate an election process when the EC has no legal duties to perform with regard to elections. We reverse the circuit court's order.
On July 14, 2017, appellee filed a petition for writ of mandamus or, alternatively, for writ of certiorari against appellants. Appellee alleged in the petition that appellants had refused to cooperate with the Jefferson County EC, William Fox, whom appellee had hired to assist with elections. According to appellee, appellants' refusal to work with the EC had caused problems during the recent tax election, and appellee was concerned that the CBEC would not comply with deadlines associated with the upcoming school board election in September 2017. Appellee requested that the circuit court issue a writ requiring the *60 CBEC to perform its duties and to allow the EC to perform his duties.
After considering appellee's petition, as well as supporting affidavits filed by Fox and Lloyd Franklin II, appellee's chief of staff, the circuit court entered an ex parte temporary restraining order the same day. The court stated that Commissioners Soffer and Adams had prevented Fox from "performing the duties of the office of Election Coordinator" and that mandamus was an appropriate remedy. The court temporarily enjoined the CBEC from interfering with the EC's "performance of the obligations of his office" and ordered it to provide Fox with "all necessary keys, logins, passwords, data, information, and any other items necessary to facilitate the election process."
In appellants' response to the petition, they admitted that appellee had hired Fox as an EC. However, appellants claimed that Fox had interfered with a prior election in Pine Bluff and that after directing Fox to stop, Soffer eventually had to call the sheriff's department. According to appellants, Soffer had the expertise to perform the necessary election-related tasks and that the CBEC had therefore decided not to utilize Fox's services. Appellants indicated that the CBEC is not required to use the services of an EC and asserted that they had complied with all mandatory election deadlines in preparation for the upcoming school-board election.
A hearing was held on appellee's petition on July 26, 2017. Leslie Bellamy, the director of elections for the Arkansas Secretary of State, testified that she had worked with election commissioners, election coordinators, and county clerks for more than twenty years. She indicated that the interaction between commissioners, coordinators, and clerks varies within each individual county and that not every county has an EC. According to Bellamy, the position of EC is not defined in Arkansas law, while there are many statutory duties required of the CBEC. She stated that in counties where an EC is utilized, that person can assist the CBEC with administrative functions such as drafting the ballots, working on the election portal, and organizing supplies for poll workers, although the ultimate responsibility for these tasks rests with the CBEC. Bellamy indicated that a county judge may hire an EC to assist the CBEC but that the CBEC does not have to work with the EC if it chooses not to do so.
Daniel Shults, the attorney for the Arkansas State Board of Election Commissioners, also testified at the hearing. He stated that Arkansas law defines and sets forth specific duties for election commissioners and the CBEC, such as formulating the ballot, appointing poll judges and workers, and controlling and supervising the voting machines. Shults agreed with Bellamy that there is no statutory definition of an EC in Arkansas. He also agreed that the county judge has the authority to hire and supervise all county employees, including an EC. According to Shults, all seventy-five counties handle the division of election-related responsibilities differently, and while some counties delegate certain election tasks to the EC, it is the CBEC, along with county clerks, who have the ultimate authority and duty to conduct an election. Shults indicated that an EC is "simply a creature of convenience" and that he knows of no legal requirement that a CBEC use the services of an EC.
At the conclusion of the hearing, the circuit court instructed the parties to file briefs discussing the duties of the CBEC and the duties of the EC. Both parties filed briefs as directed, and the court entered an order on August 31, 2017, granting appellee's petition for a writ of mandamus. The court found that the EC did not *61 have any statutory duties with regard to elections, that the EC can only perform the duties assigned to him by the CBEC, and that the CBEC can even decline to utilize the services of the EC. Nonetheless, the court concluded that appellee had shown a clear and certain right to the relief sought and that there was no other adequate remedy. The court ordered the CBEC to perform its statutory duties and stated that the CBEC cannot deny the EC access to county property or to information necessary to conduct elections. Appellants filed a timely notice of appeal from the circuit court's order.
On appeal, appellants contend that the circuit court erred by issuing a writ of mandamus ordering them to provide the EC with information and access to items necessary to facilitate elections. Appellants argue that the EC has no legal duties to perform regarding elections except those duties that are assigned to him by the CBEC.
The purpose of a writ of mandamus is to enforce an established right or to enforce the performance of a duty. City of North Little Rock v. Pfeifer , 2017 Ark. 113, 515 S.W.3d 593. A petitioner requesting the writ must show a clear and certain right to the relief sought and the absence of any other adequate remedy. Id. We have explained that a mandamus action enforces the performance of a legal right after it has been established and that its purpose is not to establish a right. Springdale Bd. of Educ. v. Bowman , 294 Ark. 66, 740 S.W.2d 909 (1987). Thus, there must be no discretion available to the ordered party regarding whether or not to perform the act. Id.
Appellants argue that because the EC has no established or legal duty to perform any functions associated with an election unless it is delegated the authority to do so by the CBEC, a writ of mandamus was inappropriate in this case. We agree.
There are numerous statutes defining the duties of a CBEC. See, e.g. , Ark. Code Ann. § 7-4-107 (Supp. 2017) (requiring the CBEC to allocate a sufficient number of ballot boxes at each polling site and to appoint election officials); Ark. Code Ann. § 7-5-101 (Supp. 2017) (stating that the CBEC shall establish election precincts and designate polling sites for each precinct); Ark. Code Ann. § 7-5-202 (Supp. 2017) (providing specific directions for the CBEC with regard to public notice of elections); Ark. Code Ann. § 7-5-207 (Supp. 2017) (setting forth requirements that the CBEC must follow in formulating the ballots); Ark. Code Ann. § 7-5-211 (Repl. 2011) (requiring the CBEC to designate persons as ballot custodians); Ark. Code Ann. § 7-5-301(k) (Supp. 2017) (stating that the CBEC shall have complete control and supervision of voting machines and electronic vote tabulating devices at all elections); Ark. Code Ann. § 7-5-611 (Supp. 2017) (providing that the CBEC must program and test the electronic vote tabulating devices); Ark. Code Ann. § 7-5-701 (Supp. 2017) (setting forth the deadlines for the CBEC to certify the election results to the Secretary of State). However, there are no statutory provisions describing the responsibility of an EC. The position of EC is mentioned in only three sections of the Arkansas Code, and not one of these sections assigns any specific election-related duties to the EC. See Ark. Code Ann. § 7-1-101(11) (Supp. 2017) (including an election coordinator in the definition of an "election official" or "election officer"); Ark. Code Ann. § 7-4-109(b)(2)(C) (Supp. 2017) (stating that an election coordinator does not have to be a resident of the precinct or county in which he or she serves); Ark. Code Ann. § 21-5-208 (Supp. 2017) (listing the classification of the position of election coordinator).
*62 The parties also cite two Arkansas Attorney General opinions that discuss the relationship between an EC and a CBEC. In opinion No. 2010-146, the Attorney General indicated that the county judge has the authority to hire, supervise, and fire the EC, as with any other county employee. However, the opinion further stated that the county judge may delegate supervisory authority over the EC to the CBEC; that state law imposes many election responsibilities on the CBEC itself, not on the county in general; and that, by hiring an EC, the quorum court and county judge may not transfer to themselves or to the EC any of the CBEC's statutory election duties or compel the CBEC to use the EC to perform any of its duties. Op. Ark. Atty. Gen. No. 2010-146. Also, in a recent opinion requested by Adams, one of the commissioners in this case, the Attorney General reiterated that it is the county judge, not the CBEC, who has the authority to hire an EC. Op. Ark. Atty. Gen. No. 2017-039. The opinion further notes, however, that the duties of an EC are not defined by statute and that there is no statutory authority addressing how that position is established. Id. While Attorney General opinions are not binding on this court, we have held that they can be persuasive. Mississippi Cty. v. City of Blytheville , 2018 Ark. 50, 538 S.W.3d 822.
In addition to the statutes and the Attorney General opinions discussed above, appellants' contention that an EC has no specific legal duties with regard to conducting elections is further supported by the testimony of both Bellamy and Shults, who indicated that not all counties hire an EC and that it is in the CBEC's discretion whether or not to utilize the services of an EC. The circuit court even recognized in its order that the EC can only perform duties assigned to him by the CBEC. Accordingly, appellants are correct that there is no clearly established right or duty of the EC in this case to election-related information or items that would warrant the issuance of a writ of mandamus. See Pfeifer , supra. Further, while the circuit court's order also directed the CBEC to "perform its statutory duties," there was no evidence introduced at the hearing to show that the CBEC had failed to do so, nor did the court make any findings that would support the writ of mandamus on that basis.
Appellee also asserts that the circuit court's order may be affirmed based on his alternative request for a writ of certiorari. A petition for writ of certiorari may be granted when there is no other adequate remedy but for the writ. McCain Mall Co. LP v. Pulaski Cty. Cir. Ct. , 2016 Ark. 279, 495 S.W.3d 625. In addition, the petitioner must show that there has been a plain, manifest, clear, and gross abuse of discretion; that there is a lack of jurisdiction or an act in excess of jurisdiction; or that the proceedings are erroneous on the face of the record. Id.
For the same reasons set forth above with regard to the writ of mandamus, appellee cannot demonstrate that, on the face of the record, the CBEC has abused its discretion by refusing to use the services of the EC, that it has acted without or in excess of jurisdiction, or that the actions of the CBEC are erroneous. We therefore reverse the circuit court's order granting the writ.
Reversed.
Hart and Wood, JJ., dissent.
Josephine Linker Hart, Justice, dissenting.
I dissent. The majority characterizes the election commissioners' (the commissioners) conduct as though they simply declined to utilize the services of an election *63 coordinator (the coordinator). Because there is no statute requiring the commissioners to utilize the services of the coordinator, the majority holds that it was therefore improper for the circuit court to issue the writ of mandamus, as the purpose of a writ of mandamus is to enforce an established right or duty. City of N. Little Rock v. Pfeifer , 2017 Ark. 113, 515 S.W.3d 593. I submit that this characterization of the commissioners' alleged conduct in this case is inadequate.
An important detail omitted from the majority opinion is the very reason why the commissioners were refusing to work with the coordinator. According to appellee's petition, the commissioners, who had already missed one election deadline, were continuing to refuse to perform their election-related responsibilities until they were paid for services they had allegedly performed outside official commission meetings. Furthermore, the commissioners refused to cooperate with the coordinator in order to prevent him from performing those responsibilities in their stead. Not only did the election commissioners decline to work with the coordinator, they affirmatively denied the coordinator access to county property. The coordinator was duly hired as a county employee by the county judge to handle election-related responsibilities. There is a profound distinction between the commissioners' simply declining to work with the coordinator and the commissioners' affirmatively preventing the coordinator from performing the responsibilities the county judge hired him to perform.
These facts are important, especially considering that the viability of the county election process in Arkansas necessarily depends on the commissioners' cooperation with county employees. As the circuit court pointed out, while several statutes prescribe the responsibilities of the commissioners, the commissioners largely lack any independent ability to carry out those responsibilities. The commissioners have no authority to hire employees or to set compensation for county employees, nor do they have any independent power to own property, file lawsuits, contract for services, or perform many other election-related support services.
Additionally, our caselaw directs us to afford the circuit court some deference in these situations. The standard of review of a circuit court's decision to grant or deny a petition for writ of mandamus is whether the circuit court abused its discretion. Pfeifer , 2017 Ark. 113, at 5, 515 S.W.3d at 596 (citing Dobbins v. Democratic Party of Ark. , 374 Ark. 496, 288 S.W.3d 639 (2008) ). A circuit court abuses its discretion when it makes a decision that is arbitrary or capricious. Id. (citing Ortho-McNeil-Janssen Pharms., Inc. v. State , 2014 Ark. 124, 432 S.W.3d 563 ).
Here, the circuit court was careful to craft its order with narrow specificity, and it supported its decision with five pages of legal authority and application to the specific facts of this case. The order contains only three limited directives: (1) the commissioners must comply with their "statutory duties," (2) the commissioners cannot deny the coordinator access to information he needs to perform his job, and (3) the commissioners cannot deny the coordinator access to county property. These commissioners had already missed one election deadline, and they were threatening to miss another. In light of the circumstances, I see nothing about the circuit court's order that could be even tenuously characterized as "arbitrary or capricious." Furthermore, to the extent there could potentially be a conflict between the election commissioners' statutorily designated responsibilities and the responsibilities the election coordinator was hired to perform, *64 said potential conflict is not adequately developed in the record.
I would affirm.