STATE *v.* SCHOOL DISTRICT No. 16.

Opinion delivered June 5, 1922.

1. MANDAMUS—CONCLUSIVENESS OF COURT'S FINDING.—In mandamus against a school board to permit relator's children to attend a white school from which the board had excluded them as being negroes, a finding that they had negro blood, being supported by substantial evidence will not be disturbed on appeal.

2. Schools and school districts—authority of directors.—The .directors of a school district have authority to determine whether or not the different children in the district are white or colored, and the duty of providing a school for each class and assigning substantial evidence, will not be disturbed on appeal.

3. Mandamus—action of school directors.—The action of school directors in determining whether a child in the district is white or colored, and assessing it to the approporiate school, is not subject to mandamus unless the directors are shown to have acted arbitrarily.

4. Schools and school districts—action of school directors.—Under Crawford & Moses' Dig., § 8915, providing for segregation of white and negro children into separate schools, the directors of a school district are not required to have a formal investigation or proceeding to determine their action in excluding negro children from a school for white children, it being immaterial how they received the information, provided they act reasonably on information before them.

5. Schools and school districts.—"colored" defined.—Under Crawford & Moses' Dig., 8915, providing for separate schools for white and colored children, the word "colored" means any person having any trace of negro blood, whether visible or not.

Appeal from Montgomery Circuit Court; *Scott Wood,* Judge; affirmed.

*R. G. Davies,* for appellant.

The term negro is not defined in the statute referring to separation of schools. The only definitions we have are contained in secs. 996 and 2603 C. & M. Digest, the former relating to separation of negroes and whites in passenger coaches, the latter being an act to prevent and punish concubinage. The first definition is more suited to the present circumstances, as being more nearly alike. There a negro was described as one in whom there is a *visible* and *distinct* admixture of African blood. The court specifically found that there was no such visible admixture here. Holdings of other courts on the question are ''so long as the negro blood is traceable.'' 31 L. R. A. (N. S.) 1911; 2 Hill 614; 125 La. 300. A distinct admixture 2 Hill 614; 134 S. W. 1151; 9 Ohio 665; 14 Mich. 414; 29 Conn. 408. See also our own holding as to ''all those who, as classes, were apparently white

and likely to be so regarded by men generally'' in 19 Ark. 121, as a test of the matter. See also 24 L. R. A. (N. S.) 447.

*Gibson Witt* and *Earl Witt*, for appellee.

A negro is a person who has any negro blood, whatever, in his veins. Sec. 2603, C. & M. Digest. Using this as the test the children of appellant were properly excluded from the white schools.

HUMPHREYS, J. Appellant, in his own behalf and as father and next friend of his three children, instituted an action for mandamus in the Montgomery Circuit Court to compel appellees, directors of School District No. 16 in said county, to permit his children to attend the school provided for white children in said district. It was alleged in the petition that the relator and his children are members of the white or Caucasian race, and that his wife, the mother of said children, is also with a trace of Cherokee Indian blood in her veins; that said board excluded the children from attendance upon the white school on the ground that they had negro blood in their veins. The case was submitted on the issue tendered by the complaint, and the testimony adduced by each party, which resulted in a finding that the evidence tended to show a trace of negro blood in said children; and a declaration of law that, for this reason, the school directors had authority to exclude said children from attendance upon the white school in the district, the exercise of which could not be controlled by mandamus, it not appearing that they arbitrarily exercised such power.

Appellant's first insistance for reversal is, that there was no substantial evidence in the record to support the court's finding of fact. A large number of witnesses testified pro and con in the case and, should an attempt be made to set out the testimony of each, it would extend this opinion to great length. Suffice it to say that the witnesses introduced in behalf of the appellant testified, in substance, that the children and their ancestors belonged to the white race; that Ophelia James, the grandmother of the children, and her reputed mother, Maria

Gocio (nee Chairs) had a small strain of Cherokee Indian blood in their veins, but no African or negro blood; that there was some doubt as to whether Ophelia James was a daughter or an adopted child of Maria Gocio; and that the witnesses on behalf of appellee testified that said children belonged to the negro or African race; that Ophelia James, their grandmother, and Maria Gocio, their great grandmother, were negro women. In view of this latter testimony, it cannot be said there was no substantial evidence tending to show a trace of negro blood in the veins of said children.

Applicant's next insistence for reversal is that the court erred in its third and fourth declarations of law which are as follows:

"The directors are given the right and authority to determine whether or not the children in their district are white, or whether or not they have negro blood in them, and it is their duty to assign them to the proper school and to provide a school for each class of children without discrimination."

"The action of the directors cannot be controlled by mandamus because the evidence fails to show that they acted arbitrarily and without evidence to support their action in determining that petitioner's children have negro blood."

Educational interests and school affairs, in each school district, in this State are placed by statute under the control and management of the school directors and they are required by law to maintain separate schools for white and colored children and youth. Sections 1915 and 1916, Crawford & Moses' Digest. In order to effectively exercise this authority, a broad discretion must be accorded them. In defining the authority conferred upon the board, this court took occasion to say in the case of *Maddox* v. *Neal*, 45 Ark. 121, that, while their authority is not without limit, yet "a wide range of discretion is vested in these boards by the statute in the matter of the government and details of conducting the common

schools.'' Courts will not interfere in matters of detail and government of schools unless the officers refuse to perform a clear, plain duty; or unless they unreasonably and arbitrarily exercise the discretionary authority conferred upon them. We think the correct rule was laid down in the case of *Watson* v. *Cambridge,* 157 Mass. 561. It was said by Mr. Justice KNOWLTON, in rendering the opinion in that case, that ''under the law the school committee has the general charge and superintendence of all the public schools in the town. The management of the schools involves many details, and it is important that a board of public officers, dealing with these details and having jurisdiction to regulate the internal affairs of the schools, should not be interfered with, or have their conduct called in question before any other tribunal, so long as they act in good faith within their jurisdiction.'' Appellant insists, however, that the board in the instant case acted in bad faith, or arbitrarily, and for that reason the court should have granted the writ of mandamus. Had the undisputed evidence in the instant case shown that the children were white, then it would have been unreasonable or arbitrary in the board to exclude them from attendance on the white school, but not so, when there was substantial evidence tending to show otherwise. Appellant's other suggestion, that the board erred in excluding said children without a formal investigation or proceeding, is not sound. We find no such requirement in the statute. It is immaterial how the board obtained its information, if they possessed knowledge or information which warranted their action as reasonable men. As there is testimony in the record tending to show a trace of African blood in the children, we think the court's third and fourth declarations of law are correct.

Appellant contends that the word ''colored,'' as used in the statute pertaining to the maintenance of separate schools for white and African races, means a visible admixture of African blood. The court, in the instant case, made the following special finding of fact: ''Petitioner's

children in appearance, show no sign of negro blood, and, judged from their appearance alone, would pass for persons of pure Caucasian blood." Based upon this finding of fact, it is insisted that the court should have compelled the school directors to admit the children to the school. maintained for white children in the district. Section 8915 of Crawford & Moses' Digest, in relation to the maintenance of separate schools for whites and blacks, is as follows: "The said board shall make provisions for establishing separate schools for white and colored children and youth, and shall adopt such other measures as they may judge expedient for carrying the free school system into effectual and uniform operation throughout the State, and providing as nearly as possible for the education of every youth." The purpose and intent of the statute was to prevent social equality or intermingling of the white and African races, thereby maintaining harmony and peace in the schools. As much confusion and disorder would result from admitting children in the white schools who have a trace of negro in them, though not disclosed by their appearance, as from admitting children who possess a visible and distinct admixture of African blood. We think the interpretation placed upon the statute by the court is correct. The language is broad, and has no relation to the degree in blood.

No error appearing, the judgment is affirmed.