MERRITT *v.* DERMOTT SPECIAL SCHOOL DISTRICT.

4-3319

Opinion delivered November 27, 1933.

244

*Ohmer C. Burnside,* for appellant.

*John Baxter,* for appellee.

KIRBY, J., (after stating the facts). Neither the bond-holders nor the trustee named in the pledges securing the bonds of the district, nor the holders of the $40,000 in outstanding warrants issued by the district, were made parties to the suit.

Counsel for appellee alleges in the complaint: "It is contended by the bondholders that the county treasurer should set aside funds to pay certain maturing interest on bonds outstanding of the district, and the registered warrant holders contend that the money now in the hands of the treasurer should be paid on warrants."

Act 169 of 1931 is a very comprehensive school law, but does not seem to enter into this controversy, except as to the amount to be set aside to be used for school purposes from the taxes of 1934 for 1933, and the amount to be used for bond purposes.

The effect of the decree herein is to impound the $7,500 now on hand to the credit of appellee district, except as to the payment of the two interest items approximating $2,600, and the money to be derived from redemptions for the purpose of enabling appellee to operate the school in 1933-34, notwithstanding the fact that the holders of the $40,000 of outstanding warrants, some registered under the law, then existing at the time and pressing for payment, and in the face of the fact that there is interest due on the bonds of the district. The teachers and other employees holding the past-due warrants of the district are deprived of their money, because, under the decree herein, there can be no money used to pay same. The fact that the court ordered the moneys impounded indicated that there are holders of warrants pressing for payment out of the little money on hand in the treasury, and what little is to be collected.

The law provides for boards of directors for managing the affairs of the school, protecting the property of the school district and carrying on and operating the schools. It also provides for the issuance of warrants, how they should be issued, and by whom, and the liability thereunder. These boards are given plenary power, and have ample discretion in the conduct and management of the business of the district, the operation of the schools and the allowance and payment of claims for which the district may be liable.

(1). The directors of this school district made an investigation of its assets and liabilities, and allotted a

certain part of the revenues on hand and arising for expenses of conducting the school, and this without regard to some of the other debts and liabilities. They determined the amount for which the school could be operated, how the accounts should be kept, and that a certain amount of the school funds should be allocated to the payment of operating expenses of the school, without regard to whether other obligations of the district could be paid in accordance with their terms. They, then, without notice to other warrant holders and creditors, went into chancery court and had it approve the budget as estimated, and the treasurer enjoined from paying other outstanding warrants or moneys, except such as were included in the budget. It made no difference to them that the operation of the school with the expense incident thereto, would cost and require the expenditure of so much of all the school revenues, present and future, that it would not leave enough in the treasury to take care of the registered warrants, fixed expenses, etc. The effect of such an order is to deprive other warrant holders of the opportunity to collect, or be paid some of their warrants, and must, of necessity, result in long delay in the collection thereof. The boards of directors are provided for by law, and selected to manage and conduct the affairs of the district in accordance with law and the best interests of the district. It was never contemplated that the chancery court should supervise or direct the conduct of the school and board of directors in the operation of the school and the creating of indebtedness and payment thereof. The chancery court has no such power or jurisdiction in fact.

(2). The intervener had the right to notice of the hearing of the court for approval of the budget, or schedule of expenses submitted by the directors, since the claims of other creditors were to be affected, and the payment of them necessarily delayed by the action taken by the court, and it is undisputed that no notice of such hearing was given to the intervening creditors, and interveners had the right to come in and present the matter of their claims before such liability was fixed about the

expenses necessarily delaying and preventing the payment of their claims, if they otherwise could have been paid.

If the chancery court had such jurisdiction, they would doubtless be in charge, directing, supervising and controlling the expenses of operation of the schools in half the districts in the State of Arkansas. This would produce an intolerable condition, and impose on the courts as well as the districts, notwithstanding the exercise of such jurisdiction might result beneficially to many of the schools.

Intervener's petition should have been heard and granted, that the parties interested might have had an opportunity to protect their rights, which were materially affected by the unwarranted order of the chancery court of which they had no notice. The chancellor erred in not granting the motion for setting aside the decree that the rights of the intervener might be determined; and, not having authority to exercise this supervising and controlling power over the district's directors and affairs, and against the interest of all others of those to whom the district was indebted, the decree is reversed and the cause dismissed.