SAFFERSTONE *v.* TUCKER.

5-2655                                          357 S. W. 2d 3

Opinion delivered May 14, 1962.

*U. A. Gentry, Julius C. Acchione* and *Harold L. King*, for appellant.

*Mehaffy, Smith & Williams*, by *Herschel H. Friday, Jr.*, and *Robert V. Light*, for appellee.

NEILL BOHLINGER, Associate Justice. The school that is known as Rightsell School is located in the south central portion of Little Rock and is within the Little Rock School District.

The appellants in this case are property owners within the attendance area of the Rightsell School and the appellees are the officials of the Little Rock School Board. Serving the general attendance area of the Rightsell School, or adjacent thereto, are two other exclusively White elementary schools and two Negro elementary schools.

Prior to the institution of this suit, the appellees announced the intention of transferring the White pupils in the Rightsell School to adjacent White schools and moving 421 Negro pupils from two Negro schools to the Rightsell School. To prevent this transfer and change, the appellants brought an action in the Pulaski Chancery Court to restrain and enjoin the appellees from making that change. The principal allegation of the appellants is that the Board was guilty of an abuse of discretion in transferring the Rightsell pupils to other schools and converting what had always been an exclusively White school in an exclusively White residential district to a Negro school; that such action by the School

Board would be arbitrary, unreasonable, capricious, wrongful and discriminatory, and would result in great disadvantage to the White pupils being transferred and would result adversely on the property values within the area where the Board purposes to convert a White to a Negro school.

The cause was duly presented to the Pulaski Chancery Court which sustained the action of the Board and dismissed appellants' complaint and from that action comes this appeal.

The law involved appears to be well settled. In this State a broad discretion is vested in the board of directors of each school district in the matter of directing the operation of the schools and a chancery court has no power to interfere with such boards in the exercise of that discretion unless there is a clear abuse of it and the burden is upon those charging such an abuse to prove it by clear and convincing evidence. *White* v. *Jenkins,* 213 Ark. 119, 209 S. W. 2d 457; *Merritt* v. *Dermott Special School Dist.,* 188 Ark. 243, 65 S. W. 2d 33; *Connelly* v. *Earl Frazier Sp. School Dist.,* 167 Ark. 49, 266 S. W. 929; *Pugsley* v. *Sellmeyer,* 158 Ark. 247, 250 S. W. 538; *State* v. *School Dist. No. 16,* 154 Ark. 176, 242 S. W. 545.

This declaration is in line with Ark. Stat. 80-509.

"The board of school directors of each district in the State shall be charged with the following powers and perform the following duties:

* * *

(b) Purchase buildings or rent school houses and sites therefor, and sell, rent, or exchange such sites or school houses. * * *

* * *

(m) Do all things necessary and lawful for the conduct of an efficient free public school or schools in the district.''

In a very recent case, *Evans* v. *McKinley,* 234 Ark. 465 [Law Rep. No. 11, Jan. 15, 1962] this court said:

"Under these [Ark. Stat. 80-509] and other powers, the School Directors could, in good faith, reach the decision they did about the Star School [closing it] ; and the evidence herein does not show that the School Directors acted in bad faith. In *Pugsley* v. *Sellmeyer,* 158 Ark. 247, 250 S. W. 538, we said: 'Courts will not interfere in matters of detail and government of schools, unless the officers refuse to perform a clear, plain duty, or unless they unreasonably and arbitrarily exercise the discretionary authority conferred upon them.' "

47 Am. Jur., Schools, § 44, p. 325, states it in this manner:

"The courts will not interfere with the exercise of discretion by school directors in manners confided by law to their judgment, unless there is a clear abuse of the discretion, or a violation of law. Every presumption is in favor of the proper exercise of power when its object is reasonably germane to the purpose of the grant."

In *White* v. *Jenkins, supra,* this court said:

"It is well settled that courts may not intervene to control matters in the discretion of administrative bodies such as school boards, in the absence of a showing of an abuse of such discretion. Necessarily, some latitude in the exercise of this discretion must be given to these boards. They represent the people of the locality affected and naturally are closer to the problems to be solved than any court or other agency could be. 28 Am. Jur. 352, *Connelly* v. *Earl Frazier Special School District,* 167 Ark. 49, 266 S. W. 929; *Pugsley* v. *Sellmeyer,* 158 Ark. 247, 250 S. W. 538; 30 A. L. R. 1212; *State* v. *Montgomery County Sp. School Dist. No. 16,* 154 Ark. 176, 242 S. W. 545."

The law therefore being clear on the authority of the school boards, the matter addresses itself to the question as to whether or not the action taken in this case was arbitrary, unreasonable, capricious, wrongful, discriminatory or oppressive. The question which presented itself to the school board was this: Rightsell

School was constructed by the Little Rock School District as a White elementary school some 55 years before this controversy arose. At the time of the erection of the Rightsell School the area involved was an exclusively White area and the construction of the Rightsell School provided school facilities for 421 pupils and for many years the school cared for the educational primary requirements of all the White children within the area.

With the changing years we now find that there are registered in the Rightsell area 944 pupils, of which 300 are White and 644 are Colored. The adjacent schools of Parham and Centennial have approximately the same ratio of Negro to White residents. In the case of the Rightsell School, we have a plant designed for 420 pupils with but 300 White children eligible in the registered area. At the same time we have three adjacent Negro schools which were overcrowded at the time of the conversion. Therefore, we must assume that the Board weighed the problem that in one instance we have vacant classrooms in three White schools and 420 Negroes as an overflow from the Negro schools. Confronted with this problem, the appellees decided upon the conversion of Rightsell to an all Negro school.

Did that conversion place an undue hardship on the pupils attending Rightsell School? A careful perusal of the record in this case discloses that of the White children to be transferred, 50 will be closer to their newly assigned school, 240 will be about the same distance, and only 7 will be as far as 22 blocks from their new school. The plight of these 7 pupils is unfortunate but the added distance to their new school appears minimal when weighed in the scales of the congested condition of some Negro schools which retard not only the educational advantages for transferred Negroes but all the other Negro pupils in those schools.

The appellants state, however, that the matter could have been resolved with fewer dislocations had the School Board erected a new school for the Negroes. The proof shows that while the income of the Little Rock School District is impressive, there remains over as a

surplus at the end of the year somewhere between nine and eleven thousand dollars which we assume is reserved for emergencies. One of the prime duties of a school board is to conserve the resources of the district and if the school board had elected to build a new school, it would have been confronted with the proposition that in three White schools there were available vacant class-rooms which it was their duty to utilize in the best pos-sible manner. It is true, as appellants point out, that the Board might have considered the conversion of the other two White schools that are most nearly adjacent to Rightsell, but it appears that this problem was thor-oughly explored by the Board and discarded for the reason that the transferees, both White and Colored, would have greater distances to travel than is the case in the conversion of the Rightsell School. This conclusion appears logical.

Appellants contend and present credible testimony that this conversion will adversely affect the property values in the affected area. Be this damage what it may, it falls under the maxim of *Damnum Absque Injuria.* The function and duty of the School Board is not to maintain property values but to provide educational fa-cilities for the children within the area. Assuming that property values will be adversely affected, the entire history of the City of Little Rock has been a history of repeated changes and each change has disrupted exist-ing conditions and economic situations. It is true, as appellants state, that the area about this school is now and has always been a high-grade White residential sec-tion and the homes and buildings within that area have, since the erection of that school, reflected affluence and culture. They still do.

But the gracious and imposing homes and substan-tial business structures that rimmed the settlement at the landing at Little Rock many years ago were not suf-ficient to confine the needs of the population to that area and the stately and imposing schools and churches were not sufficient to still the growing pains of an ex-panding community. People migrate and populations

shift in response to economic and other needs and when that migration starts, we bend our efforts not to stopping the inevitable but we bend our facilities to caring for the newly created condition.

Such is the case before us. A shift in population has presented the problem that an area exclusively White 55 years ago can now muster but 300 White children out of a registration of 944.

The attitude of the appellants toward Rightsell is understandable. People tend to take a possessive attitude toward schools under those conditions and they think of their tax money going to the support of that school alone. That is not the case. The tax contribution of the Rightsell area goes to the support of all 29 schools that comprise the Little Rock School District and the Board must and has seen fit to view the district as a whole. The educational advantages of the 421 Negro pupils transferred are a part of the obligation of the appellees just as much as is the claim of any pupil in any registered area within the district.

We are unable to say that the appellees have been motivated by any impulse except to make available the pupils within the Little Rock School area the best school facilities possible under the circumstances.

Able counsel on both sides have been most helpful, but viewing their efforts with the record in this case we find nothing that justifies this court in overturning the decision of the chancellor.

The decree is, accordingly, affirmed.

ROBINSON, J., not participating.

JOHNSON, J., dissents.

JIM JOHNSON, Associate Justice, (Dissenting). In the famous case of *Olmstead* v. *United States,* 277 U. S. 478, one of the dissenting opinions profoundly acknowledged the following truth:

". . . The makers of our Constitution undertook to secure conditions favorable to the pursuit of happi-

ness. They recognized the significance of man's spiritual nature, of his feelings and of his intellect. They knew that only a part of the pain, pleasure and satisfactions of life are to be found in material things. They sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations. They conferred, as against the Government, the right to be let alone—the most comprehensive of rights and the right most valued by civilized men.''

As I view the case at bar, appellants are only seeking to preserve their constitutional ''right to be let alone.'' While maintaining this view, certainly I acknowledge as well settled law the school board's discretionary powers in matters relating to school affairs, including the purchase and sale of school buildings, the assignment and transfer of students, the establishment in certain cases of separate schools for the White and Negro races. However, these powers are not absolute and are subject to judicial review and determination of whether the exercise of discretion has or has not been abused. In 79 C. J. S. ''Schools and School Districts'', Section 420, pages 299-300, it is written:

''As in suits by tax payers to restrain the activities of school authorities, courts will not interfere with the discretionary powers of school authorities in the selection of a school site, or in the erection, or relocation or removal of a school building, unless they are guilty of fraud or an abuse of discretion.''

Viewing the entire case before us as a whole, I am convinced that the admitted and undisputed facts show that the Board by its action in converting the Rightsell Elementary School from White to Negro has abused its discretion. See *Nicklaus* v. *Goodspeed, et al,* (Oregon) 108 Pac. 135; *Taylor* v. *Robertson,* 16 Utah 330, 52 Pac. 1; *Fisher et al,* v. *Birkey, et al,* 307 Ill. 625, 139 N. E. 126,

In 47 Am. Jur., ''Schools'' § 19, p. 311, it is written, referring to school board's discretion:

''Discretion being exercisable, certain limitations are, of course, imposed. Thus, the authority must act

in good faith for the best interest of the people of the districts affected, upon just and equitable terms which do not cause unnecessary hardship.''

Who is it that can say that this is in the best interest of the people of the districts affected and upon just and equitable terms when the flagrant results of the board's action shakes the stability of a steadfast community, destroys the property values therein, and compels its patrons to migrate elsewhere.

In *Bledsoe* v. *McKeowen* (1930) 181 Ark. 584, 26 S. W. 2d 900, this Court stated:

''The proper interpretation of the language used in the act is that the board may consolidate the proposed territory into a new district if, in the judgment of the board, it would be to the best interest of all parties residing in the district as a whole, meaning, of course, a substantial majority of all the parties residing in the territory. The exercise of a sound discretion on the part of the board in the organization or formation of a new district upon proper petition does not mean that the board may greatly inconvenience, oppress or outrage any parties residing in any part of the territory. The true interpretation of the statute is that the wishes and convenience of a substantial majority in the whole territory should be respected, if, in doing so, it would not greatly harm the other parties affected.''

It is undisputed that one of the members of the Board himself recognized that the Board's action was discriminatory and not in the best interest of the people in the Rightsell area. The Board Member, Mr. Tucker, admitted that, if he were a property owner in the Rightsell area, he would be ''mad as hell'' about the conversion. What is it about the action of the Board that would prompt one of its members to volunteer the statement that he would be ''mad as hell''? Why would he be ''mad'' and why to that extent? Could there be any other reason than the fact that he recognized that the board's decision was obviously discriminating against these people? Could it be for any other reason than the

fact that the Board's action was prejudicial, oppressive and burdensome to the property owners and taxpayers of this community? How could he justify his decision to do something to other property owners and taxpayers that he would not want done to himself.

I submit that Mr. Tucker's strong language is a concession that the school board in its unanimous decision to take this hallowed institution away from the White taxpayers and give it to the Negroes acted arbitrarily.

For these reasons and the further reason that I am convinced that if the facts were reversed and this was a case of the White patrons taking a school away from Negroes, the Federal Courts as presently constituted would not for an instant hesitate to grant to them the relief which is here by the majority being denied appellants. I respectfully dissent.