The Honorable Ed Wilkinson State Representative P.O. Box 610 Greenwood, AR 72936-0610
Dear Representative Wilkinson:
This is in response to your request for an opinion on the following questions:
 1. Is it permissible under Arkansas laws for school districts to operate a bus charter business?
 2. If so, are they subject to the Arkansas Department of Transportation rules and regulations pertaining to bus chartering operations?
 3. Would they be subject to the regulations of Interstate Commerce Commission regulations and rules regarding commercial motor carriers?
 4. Would such charter operations be allowed to use tax free dyed fuel as school buses do?
 5. Would they be required to carry the minimum $5 million liability insurance?
 6. Would they be required to obtain an Arkansas State Apportioned Vehicle tag?
 7. Would drivers be required to meet Federal Motor Carriers Safety Requirements for training, log books, and hours of service?
RESPONSE
The general nature of these questions precludes a conclusive response. The questions are asked in the abstract, without reference to any of the surrounding facts and circumstances. Of primary relevance in this regard are the specific facts surrounding the bus or buses in question. All of the particular facts regarding the acquisition and use of the bus[es] would, I believe, have to be considered in order to thoroughly address the underlying legal issues.
I must also note that the scope of official opinions issued by this office does not ordinarily encompass questions of federal law, except as those questions involve or require the interpretation of state law. The questions you have raised regarding federal regulations and requirements may therefore have to be referred either to those respective federal offices or to the school districts' local counsel for resolution.
While I am thus unable to conclusively answer your questions as posed, I will address what in my view is the applicable general legal analysis to guide the factual review as to those questions pertaining to matters of state law.
Question 1 — Is it permissible under Arkansas laws for school districtsto operate a bus chartering business?
As noted above, the specific facts surrounding the buses and the "bus chartering business" must be considered before attempting to resolve this question. Is this asked with regard to buses acquired for the chartering business? Or does this involve buses that are used for school-related purposes, and the district proposes to also use them for chartering?[1]
I cannot fully assess a district's authority in this regard without knowing, additionally, what is contemplated exactly by the phrase "bus chartering business." The term "charter business," in its ordinary sense, connotes a business involving the hiring or leasing of the bus or buses for temporary use. See generally Webster's New CollegiateDictionary 140 (1972) (defining "charter"). Because you have asked whether the school district can operate such a business, I assume that the district would provide the charter services; that is, someone or a group would hire the district's bus on a temporary basis and the district would provide the transportation services.
If your question is directed toward a charter business that would provide transportation services for students, it is my opinion that such a business would, as a general matter, likely be authorized, assuming that the particular buses are in fact properly used for transporting students under the circumstances. As noted by a previous administration of this office, school boards have considerable discretion in determining matters relating to the transportation of pupils. Op. Att'y Gen. 96-072. It was concluded in Opinion 96-072, and I agree, that a school district might, under appropriate facts and circumstances as discussed therein, lawfully impose fees for transportation. Accordingly, as a general matter, it is my opinion that a district would in all likelihood be deemed to have authority to provide charter services for transporting students.
If the district proposes to provide private transportation services, that is, for private individuals or groups for non-school related purposes, then a question arises regarding the purpose served by such an operation. There is no specific statutory authority for a school district to establish a private bus chartering business. Nor, in my opinion, can such authority reasonably be implied, as a general matter, from the school boards' express powers. School boards have implied powers as well as express powers and are authorized to exercise those powers that may be fairly implied from the powers expressly granted and the duties expressly imposed. See generally Fortman, supra (stating that "[s]uch powers will be implied when the exercise thereof is clearly necessary to enable them to carry out and perform the duties legally imposed upon them.")257 Ark. at 132. Certainly, as noted above, school boards have broad authority in the area of transportation of students. But unless the object of the bus chartering business is somehow germane to the purpose of the board's power to arrange student transportation, (see generallySafferstone v. Tucker, 235 Ark. 70, 73, 357 S.W.2d 3 (1962) (stating that every presumption is in favor of a school board's proper exercise of power when its object is "reasonably germane to the purpose of the grant[,]") then I believe this use of the school's resources will likely be subject to challenge. Article 14 of the Arkansas Constitution states in relevant part:
 No money or property belonging to the public school fund, or to this State for the benefit of schools or universities, shall ever be used for any other than for the respective purposes to which it belongs.
Ark. Const. art. 14, § 2.
It is difficult, in the absence of specific facts, to conceive of a school purpose that would be served by the district's operation of a private bus chartering business. This would presumably involve a considerable amount of resources, both financially and in terms of required manpower. The courts have, admittedly, consistently recognized the school boards' wide discretion with regard to the conduct of schools in their districts. See generally King v. Cochran, 419 F. Supp. 54
(W.D.Ark. 1976), aff'd 551 F.2d 1133 and Safferstone, supra. This discretion is reflected in A.C.A. § 6-13-620, which provides that school district boards of directors are charged, generally, with the "care and custody of the . . . property belonging to the district[s] . . ." and are authorized to "[d]o all other things necessary and lawful for the conduct of efficient free public schools in the district[s]." A.C.A. § 6-13-20(1) and (12) (Supp. 1999). This office has previously cited this Code section for the proposition that a school district could lawfully enter into a contract to provide transportation for parochial school students. Op. Att'y Gen. 98-207. This latter opinion, however, was based upon the fact that students in the district would be receiving transportation services in exchange for the district transporting the parochial school students. Thus, the arrangement clearly served an internal purpose of the school relating to the board's powers and duties in the area of transportation. The constitutional prohibition against using school property for any purpose other than that to which it belongs (Ark. Const. art. 14, § 2, supra), was not viewed as an obstacle to such an arrangement. Id. at 3.
The issue regarding the alleged misuse of school property or funds is necessarily intensely factual. I have been provided no facts in this instance weighing on either side of the issue. While I am inclined to question a school board's general authority to provide private transportation services, I must note that it is difficult to draw any preliminary conclusions, let alone make any conclusive determination, in the absence of any facts surrounding the charter operations. The above discussion provides the general legal framework to guide the factual analysis.
Question 2 — If so, are they subject to the Arkansas Department ofTransportation rules and regulations pertaining to bus charteringoperations?
As stated above, I cannot opine conclusively regarding a school district's authority to operate what is referred to in your questions as a "bus charter business." Assuming, for purposes of your second question, that there are facts supporting the local board's exercise of its discretion in this manner, then this question requires reference to the Arkansas Motor Carrier Act, as amended. A.C.A. § 23-13-203 et. seq.
(1987 and Supp. 1999). This act applies to the transportation of passengers or property by "motor carriers," over the public highways of the state. See A.C.A. § 23-13-204 (Supp. 1999). The regulation of such transportation is vested in the Arkansas State Highway and Transportation Department ("Department"). See A.C.A. § 23-13-207 (1987) and Acts 1989 (1st Ex. Sess.), No. 153. The term "motor carrier" is defined to include "both a common carrier by motor vehicle and a contract carrier by motor vehicle and any person performing for-hire transportation service without authority from the [Arkansas State Highway and Transportation Department.]" A.C.A. § 23-13-203(a)(9) (Supp. 1999). The term "person" includes corporations (A.C.A. § 23-13-203(a)(1)). Because a school district is a "body corporate," (A.C.A. § 6-13-102)), a school-operated bus charter business would presumably be subject to regulation under the Motor Carrier Act. There is an exemption under the act for "[m]otor vehicles employed solely in transporting school children and teachers to and from school[.]" A.C.A. § 23-13-206(a)(1) (Supp. 1999). This exemption would, however, presumably not apply in the case of buses used to transport persons other than students or teachers.
Whether the school district is operating as either a "common carrier" or a "contract carrier" is ultimately a question to be decided by the Department based upon the particular facts. In response to your general question, however, it is my opinion that the Department rules and regulations governing the transportation of passengers by motor carriers would likely apply to a school district operating a bus charter business (as the term "charter" is commonly defined), if in fact the buses are not being used solely to transport school children and teachers to or from school.
Question 3 — Would they be subject to the regulations of InterstateCommerce Commission regulations and rules regarding commercial motorcarriers?
The Interstate Commerce Commission has been abolished. It is my understanding that the U.S. Department of Transportation, Federal Highway Administration, is the governing federal entity. To the extent this question requires the interpretation and application of the Federal Highway Administration requirements, the answer must be supplied by that federal agency.
Question 4 — Would such charter operations be allowed to use tax freedyed fuel as school buses do?
Arkansas Code Annotated § 26-56-225 (Repl. 1991) authorizes the use of dyed distillate special fuel in, among other vehicles, "[s]tate and local government vehicles" and "school buses," as those vehicles and buses are defined in Internal Revenue Service ("IRS") Regulations. Id. at subsections (1) and (4). Whether either one of these subsections applies to the buses in question will likely depend upon the particular surrounding circumstances. I lack sufficient facts to make this determination. With regard to "local government vehicles," however, it may be significant to note that the use of such vehicles to provide non-government transportation services may result in failure to meet the federal definition. See 26 U.S.C.S. § 4221 (regarding sales to a state or local government for their "exclusive use") and Rev. Rul. 62-99
(addressing factual scenario involving use of school buses for non-government transportation).
The department responsible for administering A.C.A. § 26-56-225, the Arkansas Department of Finance and Administration, would make the final decision in this regard, based upon the specific facts at hand. The Director of the Department of Finance and Administration is authorized to assess taxes and penalties upon finding that a motor vehicle using dyed distillate special fuel was not excepted in § 26-56-225. See A.C.A. §26-56-226.
Question 5 — Would they be required to carry the minimum $5 millionliability insurance?
This refers, I believe, to insurance requirements imposed under federallaw with respect to interstate motor carrier operations. See
49 C.F.R. Part 387.15 and 49 C.F.R. Part 387.35. In accordance with Rule 17.1 (entitled "General Safety Requirements") of the Arkansas State Highway Commission General Rules of Practice and Special Rules Governing Carriers, the federal insurance/surety regulations "shall not apply to those carriers having only Arkansas intrastate authority." (Emphasis added). If thus appears that the answer to this question will turn on whether the bus charter business at issue has interstate operations. I lack sufficient facts to make this determination. You may wish to consult the FHA in this regard, as I cannot opine regarding the federal requirements.
Question 6 — Would they be required to obtain an Arkansas StateApportioned Vehicle tag?
I lack sufficient information regarding the buses in questions to address this issue. This would require reference to any applicable reciprocal agreement with another state or states relating to the operation of commercial motor vehicles, whereby the registration of such vehicles can be allocated and apportioned under a mutually agreed upon formula. See
A.C.A. § 27-14-501 and -502 (Repl. 1994).
Question 7 — Would drivers be required to meet Federal Motor CarriersSafety Requirements for training, log books, and hours of service?
Again, the factual nature of this question precludes a conclusive response. If, however, the school district is operating as a motor carrier under the jurisdiction of the Arkansas State Highway Commission, then it appears that federal safety requirements will apply pursuant to State Highway Commission Rule 17.1, supra, which provides:
 All rules and safety regulations now or hereafter prescribed and adopted by the U.S. Department of Transportation, Federal Highway Administration, applicable to motor vehicles under the Federal Motor Carrier Safety Regulations as found in 49 C.F.R. Parts 383 through 399, not in conflict with the laws of the State of Arkansas, are hereby adopted and prescribed as the safety rules and regulations applicable to the interstate and intrastate operations of motor vehicles under the jurisdiction of the Commission.
As is apparent from the foregoing responses, many of the questions you have asked require factual determinations and as such cannot be resolved in the limited scope of an opinion from this office. I lack both the resources and the authority to act as a factfinder in resolving these matters. Additionally, several of the inquiries require administrative decisions by federal and/or state authorities. These authorities, rather than this office, are best suited to undertake the necessary review to resolve the underlying issues.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:eaw/cyh
[1] You have not indicated whether the buses to be used in the charter business are school buses or whether they are otherwise currently regulated by the State Board of Education. See generally A.C.A. §6-19-111 (Repl. 1993). The possible applicability of state regulations in this regard should be noted. I recently addressed several questions regarding the applicability of state specifications in connection with school district buses regularly used in transporting students to and from school-related extracurricular activities. Op. Att'y Gen. 99-122. That opinion did not address the occasional, one-time charter of a bus; nor did it involve the questions raised herein with regard to a bus chartering business.