The Honorable Jodie Mahony State Senator 106 West Main, Suite 406 El Dorado, AR 71730-5693
Dear Senator Mahony:
This is in response to your request for an opinion on the following questions regarding the number of members allowed by law to serve on a school board, and procedures for electing the members, following passage of Act 1078 of 1999:
 1. Would this law require all school boards with more than 7 members to be reduced to either a 5 or a 7 members board, unless a school district had BOTH average daily attendance of 24,000 AND is operating under EITHER a court order OR a consolidation agreement that specifies the number of school board members? Or would a school district with less than 24,000 average daily attendance whose number of board members in excess of 7 members was determined by either a court order or a consolidation agreement be permitted to continue to operate with the number of board members specified in the court order or consolidation agreement?
 2. Since the law does not describe a mechanism by which this reduction is to be accomplished and which positions are to be identified for elimination, could this be determined by policy or a resolution created by the board in question, or would 6-13-606 (a) (application to the State Board of Education to reduce number of positions) necessarily apply?
 3. If 6-13-606 (a) applies, how would the positions to be eliminated be identified, and the individuals occupying those positions be removed from office?
 4. How must a school district which elects school board members from single member zones proceed? Would a demographer have to be hired to redraw all the zone boundaries?
 5. How should a school district with average daily attendance of less than 24,000, which moved to eight or more single member zones as a consequence of desegregation or Voter Rights Act litigation proceed?
 6. Once the number of positions has been reduced, by whatever means, by what mechanism would the resulting board comply with 6-13-608 to ensure that an equal number of board positions be filled each year?
RESPONSE
1. A school district with an average daily attendance of less than 24,000 whose number of board members in excess of 7 was determined by either a court order or a consolidation agreement will continue to operate with the number of board members specified in the order or agreement. 2. There is no clear authority for a school board to determine by policy or resolution the mechanism for reducing the number of board members to comply with Section 29 of Act 1078 of 1999 (A.C.A. § 6-13-634 (Repl. 1999) [effective July 1, 2000]. Although the matter is not entirely clear, I believe A.C.A. § 6-13-606(a) (Repl. 1999) [effective July 1, 2000] could be construed to provide the mechanism for decreasing the number of school board members in a district to comply with § 6-13-634. 3. The zones would have to be redrawn following a reduction in the number of board positions. The procedure for redrawing the zones may depend upon the original authority for election by zone. 4. In the case of a district with an average daily attendance of less than 24,000 that has eight or more zones as a consequence of desegregation or Voter Rights Act litigation, the manner in which the district will proceed will depend upon whether, in fact, the district is operating under a court order or a consolidation agreement such that the limitation in § 6-13-634(a) is inapplicable. 5. Once the number of positions has been reduced, the board likely has the authority to determine the mechanism for arranging the expiration of terms to comply with A.C.A. § 6-13-608 (Repl. 1999) [effective July 1, 2000].
Question 1 — Would this law require all school boards with more than 7members to be reduced to either a 5 or a 7 members board, unless a schooldistrict had BOTH average daily attendance of 24,000 AND is operatingunder EITHER a court order OR a consolidation agreement that specifiesthe number of school board members? Or would a school district with lessthan 24,000 average daily attendance whose number of board members inexcess of 7 members was determined by either a court order or aconsolidation agreement be permitted to continue to operate with thenumber of board members specified in the court order or consolidationagreement?
It is my opinion that the answer to the first part of this question is "no" and the answer to the second part is "yes." This is in accordance with the plain language of A.C.A. § 6-13-634 [effective July 1, 2000], which provides as follows:
 (a) As of July 1, 2000, all school districts shall have a board of directors with no fewer than five (5) and no more than seven (7) members, or no more than nine (9) members in the case of a school district having an average daily attendance of twenty-four thousand (24,000) or more.
 (b) Subsection (a) of this section shall not apply to those school districts which have a board of directors of more than seven (7) members, or no more than nine (9) members in the case of a school district having an average daily attendance of twenty-four thousand (24,000) or more, if that school district is operating under a court order or a consolidation agreement that provides for a board of directors.
A.C.A. § 6-13-634 (Repl. 1999) [effective July 1, 2000](emphasis added).
I believe it is clear from the emphasized language above that the exception to the board size restriction in subsection (a) of § 6-13-634
is not limited to districts having an average daily attendance of 24,000 or more. Rather, in my opinion, a school district whose number of board members was determined by either a court order or a consolidation agreement will continue to operate with the number specified in the order or agreement regardless of that district's average daily attendance.Accord Op. Att'y Gen. 99-275 (copy enclosed).
Question 2 — Since the law does not describe a mechanism by which thisreduction is to be accomplished and which positions are to be identifiedfor elimination, could this be determined by policy or a resolutioncreated by the board in question, or would 6-13-606 (a) (application tothe State Board of Education to reduce number of positions) necessarilyapply?
It is my opinion that a local school board in all likelihood lacks authority to determine by policy or resolution the mechanism for reducing its board size.
I recognize, in reaching this conclusion, that the new law (Act 1078) does not specifically address how a reduction in number is to be accomplished in order to comply with § 6-13-634, supra. Accord Op. Att'y Gen. 99-275. One might contend, in the absence of a mechanism specifically set forth in Act 1078, that the local board has discretion in this regard. It is of course well established that a school board has broad discretion in directing the operation of the schools in the district. See generally Safferstone v. Tucker, 235 Ark. 70, 357 S.W.2d 3
(1962). However, I believe it is unlikely that a local board's discretionary authority extends to the matter of determining the size of the board. Historically, the matter of increasing or decreasing the number of school board members has not been confided to the judgment of the local boards. Rather, the boards have been authorized to petition the county board of education requesting an increase or a decrease in number. See, e.g., Acts 1949, No. 214, § 1, Acts 1979, No. 152, § 1, and Acts 1993, No. 294, § 7 (regarding an increase); and Acts 1967, No. 232, § 1 (regarding a decrease). The county board then makes the final determination, upon a showing either that the increase will benefit the district or that the decrease will not be detrimental. Id. The only exceptions to the county board's involvement in approving an increase or decrease are found in the annexation or consolidation scenario, where board size is established by agreement of the affected districts (see A.C.A. § 6-13-1205 (Repl. 1999)), and in the situation involving a district with a minority population of ten percent or greater, where the local board by resolution chooses to elect members from five or seven single-member zones or from five single-member zones and two at large (A.C.A. § 6-13-631 (Repl. 1999)).
With the passage of Act 1078 of 1999, the State Board of Education will now make this determination regarding an increase or decrease in board size. See Acts 1999, No. 1078, §§ 30 through 33, codified at A.C.A. §§6-13-604 and — 606 (Repl. 1999) [effective July 1, 2000]. With regard, specifically, to reducing board size, A.C.A. § 6-13-606 states [effective July 1, 2000]:
 (a) The board of directors of any school district in this state which now has or which is authorized to have more than five (5) directors may file a petition with the State Board of Education requesting a decrease in the number of directors for that district to any number not fewer than five (5).
 (b) Notice of the filing of the petition shall be published within ten (10) days thereafter by one (1) insertion in some newspaper having a general circulation in the district.
 (c) Upon a showing that such decrease will not be detrimental to the district petitioning for it, the state board is authorized to decrease the number of directors for the district to any number not fewer than five (5).
 (d) The order directing such decrease shall be entered not more than sixty (60) days after the publication of notice.
 (e) Pursuant to the order and as soon as possible thereafter, the members of the board of directors shall draw by lot for the number of positions determined.
 (f) The remaining directors shall continue to serve their unexpired terms.
There is no suggestion in Act 1078, or in previous legislation, as illustrated above, that local school boards are vested with independent authority to determine how to reduce their size. The question then arises whether the above provision (§ 6-13-606, as amended by Act 1078 (see §§ 32 and 33)) can reasonably be construed to apply in the case of a district that must reduce its board size to comply with Act 1078's requirement that no board exceed seven members. On the one hand, it may seem incongruous to require a showing by such a district that a decrease will not be "detrimental to the district." A.C.A. § 6-13-606 (c), supra. On the other hand, it is presumed that the General Assembly was aware of §6-13-606 when it included the provision in Act 1078 specifying board size. Indeed, because these provisions were enacted under the same legislation, they must be construed together, if possible. See generallySargent v. Cole, 269 Ark. 121, 598 S.W.2d 749 (1980).
While the matter is not entirely free from doubt, it is my opinion that a court faced with the question would likely apply the above statutory construction principles and conclude that the procedure outlined in §6-13-606 applies in the case of a district that must reduce its board size to comply with § 6-13-634. Section 6-13-634 sets forth a range of between five and seven members. A district that must reduce its size would request a decrease within this range, following the petition procedure in § 6-13-606. The county board of education (or State Board on and after July 1, 2000) would then determine whether the district has met its burden of showing that the particular decrease sought will not be detrimental to the district.
Question 3 — If 6-13-606(a) applies, how would the positions to beeliminated be identified, and the individuals occupying those positionsbe removed from office?
In accordance with § 6-13-606(e), supra, the members of the board would draw by lot for the number of positions determined in the order directing the decrease. Subsection (f) requires that the remaining directors shall serve their unexpired terms. Thus, no one would be removed from office under this procedure.
Question 4 — How must a school district which elects school board membersfrom single member zones proceed? Would a demographer have to be hired toredraw all the zone boundaries?
It seems clear that the zones would have to be redrawn after a reduction in the number of school board members. This is not addressed, however, in Act 1078. I have found no requirement that a demographer must be hired to redraw the zone boundaries. Reference may have to be made to the underlying authority for election by zone in order to identify the applicable procedure for redrawing the boundaries. For instance, under A.C.A. 6-13-615 (Repl. 1999) (local option), the county election commission establishes zone boundaries, whereas in those districts with a ten percent or greater minority population, the local school board, with the approval of the county board of education (or county board of election commissioners on and after July 1, 2000) divides the district into zones pursuant to A.C.A. § 6-13-631 (Repl. 1999). See also A.C.A. §§6-13-607 (Repl. 1999) [effective until July 1, 2000) (zones established by local board).
Question 5 — How should a school district with average daily attendanceof less than 24,000, which moved to eight or more single member zones asa consequence of desegregation or Voter Rights Act litigation proceed?
If the district is operating under a court order or a consolidation agreement that specifies the number of board members, then it seems clear that the exception in A.C.A. § 6-13-634(b) (Repl. 1999), supra, will apply and the district will not be required to reduce the size of its board. This will be a matter for the district to determine, with the assistance of its local counsel.
Question 6 — Once the number of positions has been reduced, by whatevermeans, by what mechanism would the resulting board comply with 6-13-608to ensure that an equal number of board positions be filled each year?
It is my opinion that the board in all likelihood has the authority to determine how it will arrange the board members' terms so as to comply with A.C.A. § 6-13-608 (Repl. 1999) [effective July 1, 2000], which provides as follows:
 (a) All members of a school district board of directors shall be elected to a term of office of not less than three (3) years nor more than five (5) years in length and with the expiration of such terms so arranged that, as nearly as possible, an equal number of positions are filled each year. All members of a school district board of directors shall have terms of office of equal length.
The previous version of this provision, which remains in effect until July 1, 2000, requires the filing of a petition with the county board of education describing the necessary changes in the arrangement of school board members' terms to equalize terms. See A.C.A. § 6-13-608 (Repl. 1999) [effective until July 1, 2000]. The county board must then authorize the arrangement.
As can be seen above, the new version is silent as to the procedure or mechanism for ensuring that an equal number of positions are filled each year. Nor is there any other provision in the new law (Act 1078) addressing the arrangement of terms. This, in my opinion, distinguishes § 6-13-608 from § 6-13-634 (specifying board size), and the question of decreasing board size to comply with the latter provision. (See discussion above). Additionally, there is legislative precedent for the local board acting by resolution to establish the expiration of school board members' terms. See Act 129 of 1967 (repealed by Act 294 of 1993, § 7) (providing that the board of a district with eight directors may, by resolution, establish the terms "in such a manner as the said resolution directs . . .")
It is therefore my opinion that the General Assembly in all likelihood intended to confide this matter to the judgment of the local board. The board could, in my view, choose to have the members establish terms by lot, or it could devise some other mechanism for arranging the terms. The board may wish to consult its local counsel for guidance in this matter.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:EAW/cyh Enclosure