The Honorable Jay Bradford State Representative P.O. Box 8367 Pine Bluff, AR 71611-8367
Dear Representative Bradford:
I am writing in response to your request for an opinion concerning the use of school district assets in connection with a political rally. You have presented the following facts and question in this regard:
 On December 8, 2003, numerous public school district owned vehicles with public school students and other citizens as passengers attended a political rally sponsored by an organization called `Save Our Schools.' Is this a legal use of school district vehicles and other school district assets, such as fuel and district paid drivers?
Correspondence attached to your request elaborates somewhat further by stating that "several rural school districts, and at least one organization (Save Our Schools) used school children, school personnel and school property (buses) for a political rally at the State Capitol." It is further stated that "approval by competent authority in each participating school district was given to use school employees, property and school-age children for a political lobbying effort under the guise of a school field trip."
RESPONSE
Determining whether the activity in question constituted a permissible use of school district resources will necessarily entail a factual inquiry of the sort I am neither equipped nor authorized to undertake. While I am consequently unable to offer a definitive opinion on the matter, I will review the probable analytical framework for addressing your question.
The issue underlying your question is whether the activity runs afoul of Article 14, Section 2 of the Arkansas Constitution, which provides that "[n]o money or property belonging to the public school fund, or to this State for the benefit of schools or universities, shall ever be used for any other than for the respective purposes to which it belongs." The same article also provides that "no [school] tax shall be appropriated for any other purpose nor to any other district than that for which it is levied." Id. at section 3.
When considering the constitutionality of any particular use of school funds or property in light of Ark. Const. art. 14, the local school board's statutory power and duty with respect to the "care and custody" of district property must be noted. A.C.A. § 6-13-620 (1) (Supp. 2003). The legislature has authorized school boards to do all things "necessary and lawful for the conduct of efficient free public schools in the district[.]" Id. at subsection (12). See Op. Att'y Gen. Nos. 99-348 and 91-315, citing Safferstone v. Tucker, 235 Ark. 70, 357 S.W.2d 3 (1962). With regard to the expenditure of school funds, my immediate predecessor stated that the question is whether an expense can be characterized as "`reasonably useful and proper' in the educational process." Op. 99-348.
The allegation that school district employees, students and buses were "used . . . for a political rally" and a "political lobbying effort" thus raises the question whether school district resources were put to an unlawful use.[1] I have found no case law or statute on this precise issue. There is thus no definitive answer in existing Arkansas law whether such a school-sponsored political lobbying effort would be deemed reasonably useful and proper in the educational process, if challenged.Cf. Op. Att'y Gen. 93-326 (opining that the use of school funds to campaign for a millage increase is prohibited under Ark. Const. art. 14, § 3). A definitive resolution would require factual determinations regarding such matters as the particular manner in which school employees, students, and resources were "used" in the activity. This type of review is outside the scope of this opinion. Generally, however, it is my opinion that a school-sponsored political lobbying effort involving student participation may be effectively distinguished from an educational field trip and consequently may fall outside the school district's educational mission. Cf. Cook v. Griffin, 47 A.D.2d 23,364 N.Y.S.2d 632, 635 (1975) ("authority to conduct educational field trips" characterized as "reasonably necessary to implement [school district's] statutory authority").
These observations follow from your characterization of the activity as a political rally and the inference that students were compelled to attend and participate in a school district lobbying campaign.[2] Whether the action is a legally objectionable expenditure of school funds or use of school property can only be definitively decided with reference to all the facts, and may require resort to the courts for resolution.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
[1] I assume that the term "lobbying," as used in connection with the activity in question, has a meaning consistent with the definition of "lobbying" under The Disclosure Act for Lobbyists and State and Local Officials (see A.C.A. § 21-8-401 (Repl. 1996)), i.e., "communicating directly or soliciting others to communicate with any public servant with the purpose of influencing legislative action or administrative action[.]" A.C.A. § 21-8-402 (10) (Supp. 2003).
[2] How the issue is framed is critical to the analysis. A school district's lobbying activities might, for instance, properly be characterized as permissible "government speech," depending upon the particular context. Compare Op. Att'y Gen. 2001-031 (addressing a city's use of "hamburger taxes" for the purpose of lobbying). As my predecessor observed, the propriety of "government speech" ordinarily arises in connection with election campaigns. Id. Outside of that context, however, (and assuming no position on religion is implicated) it is generally recognized that the First Amendment does not prevent government from taking positions on political issues. Id. (and cases cited therein).
The limited facts before me do not suggest, however, that the issue at hand turns on the school district's right to engage in "government speech." If students were in attendance, then I believe the issue is properly focused on whether the activity was appropriate or conducive to the educational process. A lobbying campaign involving students is suspect, in my opinion, under this test.